**Roy Allen UPTON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–93–0440–CR.**

Court of Appeals of Texas, Amarillo.

Feb. 2, 1995.

Michael Hrin, Amarillo, for appellant.

James Farren Dist. Atty., John L. Owen, Canyon, for appellee.

Before REYNOLDS, C.J., and DODSON and QUINN, JJ.

QUINN, Justice.

Appellant Roy Allen Upton was convicted by a jury of aggravated sexual assault of a child and sentenced to life imprisonment. By four points of error, he contends that the trial court (1) abused its discretion in allowing a witness to testify after she violated the "rule of witness"; (2) erred in allowing the victim's mother to testify to hearsay; (3) erred in allowing the victim to testify due to her inability to distinguish between truth and fiction; and (4) erred in allowing the victim to testify due to her lack of an independent recollection of the facts. Disagreeing with appellant, we overrule his points and affirm the judgment below.

## FACTS

Upon request of his brother, Warren, and sister-in-law, Donna Jo, appellant agreed to babysit his nephew and nine year old niece, A.U. That evening, on January 24, 1992, the children were left at his apartment by their parents. Shortly thereafter, appellant carried A.U. into a bedroom and placed her on a bed. Next, he proceeded to lay atop the young girl and sexually assault her. The two children later returned to their mother's care and mentioned nothing.

When Donna Jo and Warren again sought to leave A.U. with appellant the following Saturday, the child protested. Warren had taken her to the apartment. Upon entering it, she ran back to Donna Jo, who waited in the car, and began crying. She then informed her mother of the events occurring the night before.

### The Rule

■ Appellant initially contends that the prosecution should have been denied leave to call Mary Embry, A.U.'s counselor, to testify at the punishment phase of the proceedings. We disagree.

As trial began, both parties invoked "the Rule," and the court admonished those initially identified as witnesses accordingly. Soon each side presented its case-in-chief and rested. The jury returned a verdict of guilty.

Immediately thereafter the court commenced the punishment phase of the proceeding, and the State proposed to call Mary Embry as its first witness. It hoped to solicit from her information regarding A.U.'s continuing need for psychological counseling. Before it could do so, appellant objected. He contended that she was present in the courtroom during the guilt/innocence phase and heard the testimony of other witnesses. Calling her to testify under those circumstances, according to appellant, violated article 36.05 of the Texas Code of Criminal Procedure. The prosecution replied that it had not anticipated using her as a witness but decided otherwise while the jury deliberated appellant's guilt.

■ Article 36.05 of the Texas Code of Criminal Procedure prohibits witnesses who are under "the Rule" from hearing testimony "in the case." *Tex.Code Crim.Proc.Ann.* art. 36.05 (Vernon 1981). A similar provision is found at Rule 613 of the Texas Rules of Criminal Evidence. Both empower the court to exclude witnesses from the courtroom. *Tex.R.Crim.Evid.* 613 Yet, the manner of enforcing either lies within the trial court's discretion, the exercise of which will not be disturbed but for abuse. *Cooks v. State,* 844 S.W.2d 697, 733 (Tex.Crim.App.1992), *cert. denied,* — U.S. —, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993); *Guerra v. State,* 771 S.W.2d 453, 475–76 (Tex.Crim.App.1988).

Furthermore, in determining whether abuse occurred, the reviewing court must consider the witness, the nature of his testimony, and its relationship to the case in chief. *Guerra v. State,* 771 S.W.2d at 476. For instance, those who were not originally anticipated to be called due to their lack of personal knowledge about the offense may subsequently testify with little risk of error; this is especially so when the testimony neither corroborates or contradicts that of another witness. *Id.* Similarly, the admission of testimony related to something other than guilt or innocence is unlikely to result in the violation of Rule 613 or article 36.05. *Id.; Rodriguez v. State,* 772 S.W.2d 167, 168–69 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd).

In the instant case, the State called Embry after the jury had determined appellant's guilt. Moreover, her testimony during the punishment phase of the trial neither corroborated nor contradicted evidence serving to establish or refute an element of the crime. Given these circumstances, we cannot say that the trial court abused its discretion in admitting her testimony.

### Outcry Testimony

■ Appellant next argues that the trial court should have prohibited Donna Jo from relating to the jury her daughter's outcry testimony. Allowing her to do so resulted in a violation of article 38.072 of the Texas Code of Criminal Procedure, he concluded. Again, we disagree.

On the day of trial, October 19, 1993, the State served notice upon appellant of its intent to call Donna Jo. The latter, according to the notice, was expected to repeat in open court the substance of A.U.'s comments made at the scene of the crime. The accused objected. Article 38.072, he asserted, entitled him to 14 days prior notice. In response, the prosecution argued that it complied with the statute by previously allowing appellant to review the file pursuant to its "open-file" policy.

Article 38.072 authorizes the use of outcry hearsay upon compliance with several conditions. The one here pertinent involves notification. Specifically, a party intending to use the statement must so inform his opponent "on or before the 14th day before the date the proceeding begins." *Tex.Code Crim. Proc.Ann.* art. 38.072 § 2(b) (Vernon Supp. 1995). In doing so, he avoids exposing his opponent to harmful surprise. *Fetterolf v. State,* 782 S.W.2d 927, 930 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd) (holding the the requirement serves to minimize surprise).

However, neglecting to provide the requisite notice does not necessarily mandate reversal. For instance, in *Fetterolf,* the court was also asked to reverse due to belated notice. The reviewing court considered the record. Ultimately, such factors as the accused's previous inspection of the file, his discovery of the intended outcry witness and statement during that inspection, and the appearance of the victim as a live witness convinced the court of the harmlessness of the error. *Id.*

As in *Fetterolf,* the State here also failed to provide timely notice. Yet, appellant admitted to having reviewed the State's file and having garnered the identity of two potential outcry witnesses. Though it "surprised" him that Donna Jo, as opposed to Warren, was called, he did not establish how that impeded his defense. A.U. also appeared as a witness and provided testimony comparable to that in the hearsay statement. Moreover, appellant freely cross-examined her.

■ That the State violated article 38.072 is beyond doubt. Yet, the record discloses no harm. Thus, we overrule the second point of error. Nonetheless, one must not construe our decision as authorizing the substitution of the notice requirement with an "open-file" policy. Compliance with each element of article 38.072 remains mandatory. *Long v. State,* 800 S.W.2d 545, 547–48 (Tex. Crim.App.1990).

### Competency and Independent Recollection

■ In points of error three and four, appellant protests the trial court's decision to permit A.U. to testify. The child, in his estimation, not only lacked the ability to distinguish between the truth and a lie but also the ability to independently recollect the events. We again disagree.

■ Normally, witnesses are presumed competent to testify. *Tex.R.Crim.Evid.* 601(a). This is not true with regard to children who lack sufficient intellect to relate transactions about which they are questioned. *Id.* Though no minimum age for competency exists, *Heckathorne v. State,* 697 S.W.2d 8, 10 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd), the court must, nevertheless, assure itself that the child witness has the ability to intelligently observe the events, the capacity to recollect and narrate them, and the moral responsibility to tell the truth. *Dufrene v. State,* 853 S.W.2d 86, 88–89 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd); *Reyna v. State,* 797 S.W.2d 189, 191–92 (Tex. App.—Corpus Christi, no pet.).

■ More importantly, whether the minor can define such terms as "truth" or "lie" is unimportant if he otherwise comprehends the need to be truthful. *Dufrene v. State,* 853 S.W.2d at 88. Similarly, inconsistencies or conflicts within the testimony do not automatically render him incompetent; they simply affect the child's credibility. *Id.* at 89; *Heckathorne v. State,* 697 S.W.2d at 11.

Because the witness's testimony must also be addressed in resolving the matter, we now review the substantive dialogue between A.U., the prosecutor, and the accused. The State began the questioning with:

Q: ... And, [A.U.], how old are you?

A: Ten.

Q: And where do you go to school at?

A: San Jacinto.

Q: And what grade are you in?

A: Fourth grade.

Q: Now, [A.U.] do you know the difference between a truth and a lie?

A: Yes.

Q: Now, if I told you that I had purple hair, would that be the truth or would that be a lie?

A: A lie.

Q: Okay. And what are you supposed to tell in court, the truth or a lie?

A: Truth.

Q: And do you remember incidents involving Uncle Allen?

A: Yes.

Appellant then asked:

Q: Okay. Now, you said that you understand what the truth is?

A: Yes.

Q: Do you know what it means to also tell a lie?

A: No.

Q: So, you don't know what it is to lie about something?

A: Yes, I do.

Q: Okay. And what is a lie?

A: [No response from witness].

Q: If you don't know, its okay. You don't know what a lie is?

A: No.

Q: Do you know what would happen to somebody if they tell a lie?

A: Yes.

Q: Okay. What happens?

A: Go to jail.

Q: Okay. If they tell us a lie in court, you mean, they go to jail?

A: Yes.

Q: Okay. Have you ever told a lie?

A: Yeah.

Q: ... Okay. What did you say that was a lie?

A: [No response from the witness].

Q: Well, let me ask you this.... What happened to you when you told that lie?

A: I got in trouble.

Q: Now, this man over here asked you if you remember something had happened with your Uncle Allen. Okay, remember that's what he asked you a minute ago?

A: Yes.

Q: Okay. Do you remember that on your own or do you remember it because of coming in here yesterday and people talking to you about it?

A: People talking about it.

Q: Okay. You don't have—do you remember it on your own or just from what they talked to you about?

A: Talked about.

Q: Okay. So what you are going to tell us today is what you and these people talked about, was it just yesterday you were in here?

A: No.

Q: Okay. Last week?

A: Yeah.

Prosecution then continued with:

Q: Now, [A.U.], we came up here and we talked for a good bit before, didn't we?

A: Yes.

Q: And let me ask you this: thinking back to what happened with your Uncle Allen, do you remember that?

A: Yes.

Q: And did it help you remember that after we talked?

A: Yes.

Q: It's kind of hard being in court here today, isn't it?

A: Yes.

Q: ... Okay. And after we talked, did you remember anything about your Uncle Allen?

A: Yes.

Having completed this preliminary exchange, the trial judge ruled A.U. competent to testify. She was then asked to inform the jury of the events surrounding her accusations. The young lady did so. Included in her testimony were the identification of those within the immediate vicinity during the assaults, designation of the locale at which the

acts occurred, and description of the criminal acts themselves.

■ When considered in toto, A.U.'s testimony satisfied the elements of Rule 601. It revealed her ability to recall and relate the events as they transpired. That she may have had difficulty in defining "a lie" mattered not; her comment that liars "go to jail" sufficed to illustrate her understanding of the need for truth. Similarly, her comments were not rendered incompetent merely because she met with the prosecution before trial. Refreshing personal knowledge is quite permissible as long as the method utilized is not inherently untrustworthy or does not substantially impair the opponent's ability to test recall through crossexamination. *See Zani v. State*, 758 S.W.2d 233, 244 (Tex. Crim.App.1988) (involving hypnosis). The mode utilized here, that is, discussing the events with State representatives, fell within neither category. Indeed, the operative question was whether the witness remembered, and A.U. testified that she did. We, therefore, overrule points three and four.

The judgment of the trial court is affirmed.