NO. 12-01-00047-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


HASKELL PAUL CHANEY, JR.,
§
 APPEAL FROM THE SECOND

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 CHEROKEE COUNTY, TEXAS

 

 Haskell Paul Chaney, Jr. appeals his conviction for indecency with a child. The jury assessed
a sentence of thirteen years of imprisonment and a $10,000.00 fine. In nine issues, Appellant
challenges the sufficiency of the evidence to support his conviction and sentence, asserts the trial
court committed charge error and erred in admitting certain evidence, and complains of the
ineffectiveness of trial counsel. We affirm.


Background

 Appellant had been friends with Faye and Jimmy Cantrell for more than ten years. He was
a frequent guest in their home. An alcoholic, Appellant sometimes drank too much to safely drive
himself home. On May 21, 1999, Appellant started drinking at about 2:00 p.m. He had consumed
at least sixteen beers before going over to the Cantrells' house at about 8:00 p.m. They ate supper
and Appellant and Jimmy Cantrell drank more beer. Because they believed Appellant was
inebriated, the Cantrells asked him to spend the night in their spare bedroom. Mr. Cantrell then went
to bed while Appellant sat on a couch and watched television in the living room. 

 The Cantrells were babysitting three of their grandchildren that night. Faye Cantrell put two
of them to bed in the bedroom she shared with her husband. She then also went to bed. The third
grandchild, five-year-old A.J. (1), was already asleep on a pallet in the living room floor in front of the
television. Later, Mrs. Cantrell got up to check on A.J. When she walked into the living room she
immediately saw that neither A.J. nor Appellant was in the room. Mrs. Cantrell called out A.J.'s
name and A.J. came running to her from the spare bedroom. A.J. did not have on any clothes from
the waist down. Mrs. Cantrell saw A.J.'s underwear lying on the floor in the living room. She
grabbed A.J. and the underwear and went into her bedroom. She woke her husband up and told him
to get Appellant out of the house. Mr. Cantrell, who did not know what had happened to upset his
wife, attempted to talk to Appellant who had gone into a bathroom and closed the door. Mr. Cantrell
simply told him, through the door, that they needed to talk and then went to the bathroom at the other
end of the house. When Mr. Cantrell came out of the bathroom, Appellant was getting in his truck
and already had it started. Appellant left without saying anything. Mrs. Cantrell then told her
husband what she had seen.

 The Cantrells called 911 and a sheriff's deputy came out to investigate. They found
Appellant's cigarettes, which he usually carried in his shirt pocket, on A.J.'s pallet. They found his
hat in the spare bedroom where he had been invited to sleep and from which A.J. had come running.

 The Cantrells did not attempt to discuss the matter with A.J. Mrs. Cantrell took her to a crisis
center where she was interviewed by Kimberly Fain. The interview, which took place from about
3:30 a.m. to about 4:00 a.m., was videotaped. Ms. Fain, the executive director of the crisis center,
was the first person A.J. spoke to about what happened that night. Ms. Fain testified that A.J. told
her the man who was at her nanna and pepaw's house took off her shorts and panties and touched
her in her "teetee place" with his finger.

 On the videotape, A.J. told Ms. Fain her name and wrote it on paper. She identified colors,
counted to six, and said she was five. She sucked her thumb between responses. A.J. indicated she
did not know why they were there but thought they were there to talk. She answered with an
affirmative "uh huh" when Ms. Fain asked if something happened to her that they needed to talk
about. She spoke softly, in phrases and short sentences, saying: "at nanna's," "the man I don't
know," "he looks different," "he's black," "he did some bad stuff," "he pulled his pants down," "I
saw his panties." She hid behind her hands as she relayed the story. She explained that she was in
the living room watching TV and he came into the living room from the other room. She fidgeted
as she said he came into the living room without his pants, shirt, or hat. She said she was on the
couch and he had a little chair. Then he got on the couch, then nothing. Ms. Fain continued to ask
open-ended questions to get A.J. to tell her what happened. A.J. said she had been wearing the same
clothes she had on at the time of the interview: a shirt, shorts, and panties. She said they watched
TV with the lights off. No one else was in the room. Fidgeting, she said, "I don't remember what
happened next." She said the man called her Amber, which is not her name, but he did not say
anything else to her. Ms. Fain asked her if he did anything to her, and A.J. said no. A.J. said the
man had a black and white hat with signs on it. Everybody else was asleep. He watched TV for a
long time. Ms. Fain asked, "Then what happened?" A.J. responded, "Nothing. That's all. He went
home." 

 Ms. Fain then brought up the subject of private body parts and asked A.J. to identify her
private parts. In response, A.J. said her "teetee place" and her "boobies." Ms. Fain asked her, "Has
anyone ever touched you on a private place like that?" A.J. responded in the negative with an
emphatic "un uh." A.J. said if that ever happened to her she would tell him to stop and then go tell
nanna because she would make peepaw wake up and make him go bye-bye. Ms. Fain again asked
if that had ever happened to her before and A.J. again said, "un uh." Ms. Fain then asked, "Is that
what happened to you tonight?" A.J. nodded yes. Ms. Fain asked her to point to where someone
had touched her and she said "in the teetee place." Ms. Fain asked what someone touched her with
and she said "with the fingers." Ms. Fain asked who touched her and she said "the guy I don't
know." Ms. Fain asked what she had on and A.J. first said all her clothes and then said, "The man
did take my shorts off and panties with the shorts." Ms. Fain asked what he did next and A.J. first
said "nothing" and then she said he touched her with his hand, with more than one finger, one time. 
A.J. said she jumped up and told her nanna. Her nanna woke up her peepaw and made the man
leave. She said the man put on his clothes, but he left his hat. He did not say anything to anyone and
he did not touch anyone else in the house. A.J. said it happened on the couch and denied going into
the other room. Ms. Fain then terminated the interview.

 Appellant was arrested the morning after the incident. Arresting officers made an audiotaped
recording of their interview with him. He said he had been drinking the day before and had gone
over to visit his friends, the Cantrells. He said the last thing he remembered from the night before
was eating dinner. But he also remembered Mr. Cantrell telling him he could lie down on a bed and
he thought he had. Although he recalled there were two little girls and one little boy in the house,
he did not remember doing anything to one of the girls. However, he also stated, "Maybe I did it if
they say I did, but I don't remember doing it."

 Deputy John Hensley, who was present during that interview, told the jury that Appellant
showed remorse although he repeatedly said he did not know what had happened. Deputy Hensley
believed it was significant that Appellant did not say he did not commit the offense.

 A.J., who was seven years old at the time, testified before the jury. She said she remembered
the night of the offense. She went to sleep in the living room wearing a nightgown and panties. 
When she woke up a man was with her in the living room. She testified that the man took off her
panties and touched her "teetee spot." Later she saw her nanna who woke up her pepaw. Her pepaw
told the man to get out. Then she went to a doctor and told a nurse and another lady what had
happened. A.J. then identified Appellant as the man who touched her.

 Tammy Ford, the sexual assault nurse examiner who examined A.J. at the hospital at 4:30
a.m., testified that she did a thorough exam and found no evidence of trauma. Reading from her
record of the exam, she told the jury what A.J. had told her:


 At Nanna's the man was there. There was people and a different man I don't know. He looks
different. He did some bad stuff. He pulled his pants down and I saw his panties. Somebody took
my shorts off. The guy with the hat took my panties with my shorts. He used fingers more than one
time. He didn't hurt me and I jumped up. I told him to stop and I told Nanna. He touched me in the
peepee place with his finger, the guy that I didn't know.



 Appellant took the stand in his own defense. He explained that he is fifty-one years old, had
been married for twenty-one years and has three daughters. He is an auto mechanic and owns his
own business. He admitted that he is an alcoholic and when he drinks a lot he has blackouts after
which he does not remember what happened. He testified that he was already drunk when he got
to the Cantrells' house and he continued to drink after he got there. Additionally, he had not eaten
in about twenty-four hours. He remembered the fact that he ate dinner at the Cantrells' house and
that Mr. Cantrell told him to go to bed, but remembered nothing more. He thought he did go to bed. 
He said he could not honestly tell the jury whether or not he committed the offense because he did
not remember. He also did not remember the twenty-mile drive back to his house. He admitted that
when a person gets as drunk as he does sometimes, anything can happen.

 Appellant's wife, Marilyn Chaney, testified that Appellant has had blackouts for several
years. Other than the drinking problem, Appellant is a good husband and father who has good
relationships with his three daughters. Each of Appellant's three daughters testified, stating he is a
good father. The oldest also said he was trying to get help with his alcoholism.


The Videotape

 In his eighth issue, Appellant asserts that the trial court erred in failing to make findings
pursuant to Code of Criminal Procedure article 38.071 prior to admission of the videotaped interview
of the child. He argues that, because the child testified at trial and article 38.071 applies only when
the child is unavailable to testify at trial, the videotape is inadmissible. He further contends the
article 38.071, section 5 findings were required for the videotape to be admissible. Appellant also
argues that it would have been impossible for the court to make the findings. Therefore, because the
child testified at trial and because the trial court did not comply with article 38.071, section 5, the
videotape should not have been admitted.

 Article 38.071 of the Texas Code of Criminal Procedure provides that a recording of a child's
oral statements, made before a complaint has been filed or an indictment returned, can be admitted
into evidence if certain requirements have been satisfied. Tex. Code Crim. Proc. Ann. art. 38.071
(Vernon Supp. 2003). Appellant did not object at trial to the introduction of the videotape. Nor did
he request it to be edited to remove leading questions and the answers to those questions. He
therefore waived any error in its admission. Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim.
App. 1991). As Appellant asserts, article 38.071 is applicable only when the child is not available
to testify in the presence of the defendant. Tex. Code Crim. Proc. Ann. art. 38.071, § 1. Because
she did testify, it is obvious the requisite showing of unavailability was not made. However, rather
than making the videotape inadmissible, this merely makes article 38.071 inapplicable in this case. 
See id. Further, the proper objection under article 38.071 is lack of confrontation. Chambers, 805
S.W.2d at 460 n.1. Therefore, when A.J. testified and made herself available for cross-examination,
Appellant's confrontation rights were vindicated. Briggs v. State, 789 S.W.2d 918, 924 (Tex. Crim.
App. 1990). Finally, A.J.'s trial testimony duplicated her videotape testimony and was supported
by the testimony of Ms. Fain and Ms. Ford. Any error in admitting the videotape is cured where the
same evidence comes in elsewhere without objection. Hemphill v. State, 826 S.W.2d 730, 732-33 
(Tex. App.-Houston [14th Dist.] 1992, pet. ref'd, untimely filed). We overrule Appellant's eighth
issue.


Competency of Child

 In his fourth issue, Appellant complains that the evidence is insufficient because the only
direct evidence of the crime was presented by A.J., a child whom he contends was not properly
qualified to testify as required of child witnesses pursuant to rule of evidence 601. He asserts that
there is no showing that A.J. understood the consequences of telling a lie or the moral responsibility
to tell the truth.

 Texas Rule of Evidence 601 provides that children are incompetent to testify if, after being
examined by the court, they appear not to possess sufficient intellect to relate transactions with
respect to which they are interrogated. Tex. R. Evid. 601. The competency of a witness is generally
a question for determination by the court and its ruling will not be disturbed unless an abuse of
discretion is shown. Melton v. State, 442 S.W.2d 687, 690 (Tex. Crim. App. 1969). The court must
assure itself that the child has the ability to intelligently observe the events, the capacity to recollect
and narrate them, and the moral responsibility to tell the truth. Upton v. State, 894 S.W.2d 426, 429
(Tex. App.-Amarillo 1995, pet. ref'd). This court must review the entire testimony of the witness
to determine if the trial court abused its discretion. Dufrene v. State, 853 S.W.2d 86, 88 (Tex. App.
-Houston [14th Dist.] 1993, pet. ref'd). Initially, we note that Appellant may not raise the issue of
the child's competency for the first time on appeal, Rich v. State, 823 S.W.2d 420, 421 (Tex.
App.-Fort Worth 1992, pet. ref'd), and Appellant did not raise the issue of A.J.'s competency at trial.
However, we will address the merits of the complaint.

 Before A.J. testified, the trial judge questioned her outside the presence of the jury. She said
she is seven years old and in the second grade. The judge asked her questions to determine if she
knew the difference between the truth and a lie. She said she knows the difference, it is best to tell
the truth, and she always tries to tell the truth. She promised the judge she would tell the truth. The
jury was returned to the courtroom and A.J. testified without objection. She told the jury what
happened on the night of the offense and identified Appellant as the man who assaulted her. 
Considering her answers to the judge's questions regarding her understanding of what it means to
tell the truth and her trial testimony, the requirements of rule 601 have been satisfied. She showed
her ability to recall and relate the events, and her understanding of the need to tell the truth. See
Upton, 894 S.W.2d at 430-31; Dufrene, 853 S.W.2d at 88-89. The trial court did not abuse its
discretion in finding the child competent to testify. We overrule Appellant's fourth issue.


Legal Sufficiency

 In his first issue, Appellant contends the conviction cannot stand because the State presented
no evidence that Appellant had an intent to gratify or arouse his sexual desire through his alleged
actions. He argues that, because he was intoxicated and he could not remember anything about the
alleged crime, he could not form the intent to arouse or gratify his sexual desire. He also asserts that
the videotaped statement of the child illustrates that no intent to gratify existed. He argues that, if
the alleged act occurred, intent to gratify cannot be inferred from the act and the State was required
to, but did not, offer evidence of extraneous acts to prove intent. In his sixth issue, Appellant asserts
the trial court erred in denying his motion for directed verdict which was predicated on the State's
alleged failure to prove intent to gratify or arouse his sexual desire.

 The standard for reviewing the legal sufficiency of the evidence is whether, viewing the
evidence in the light most favorable to the jury's verdict, any rational trier of fact could have found
beyond a reasonable doubt the essential elements of the offense charged. Jackson v. Virginia, 443
U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). The trier of fact is the sole judge of
the weight and credibility of the witnesses and may believe or disbelieve any part of any witness's
testimony. Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). The jury is entitled to
draw reasonable inferences from the evidence. Benavides v. State, 763 S.W.2d 587, 588-89 (Tex.
App.-Corpus Christi 1988, pet. ref'd). A complaint about the denial of a motion for directed verdict
is in actuality an attack upon the sufficiency of the evidence to sustain the conviction. McDuff v.
State, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997).

 At the time of the offense, the Penal Code provided that a person commits the offense of
indecency with a child if, with a child younger than seventeen years and not his spouse, he engages
in sexual contact with the child. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.
Gen. Laws 3589, 3619 (amended 1999, 2001) (current version at Tex. Penal Code Ann. § 21.11
(Vernon Supp. 2003). At the time, the term "sexual contact" as used in this statute meant "any
touching of the anus, breast, or any part of the genitals of another person with intent to arouse or
gratify the sexual desire of any person." Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993
Tex. Gen. Laws 3589, 3618 (amended 2001) (current version at Tex. Pen. Code Ann. § 21.01(2)
(Vernon Supp. 2003). The requisite specific intent to arouse or gratify the sexual desire of a person
can be inferred from conduct, remarks, or all the surrounding circumstances. McKenzie v. State, 617
S.W.2d 211, 216 (Tex. Crim. App. 1981). An oral expression of intent is not required. Gerhardt
v. State, 935 S.W.2d 192, 194 (Tex. App.-Beaumont 1996, no pet.).

 A.J. indicated Appellant was wearing nothing but his underwear during the assault. From
Mrs. Cantrell's testimony that A.J. ran from the bedroom in answer to Mrs. Cantrell's call, the jury
could infer that Appellant took A.J. from the living room to the more secluded bedroom. The jury
could infer from this act that he did not want to be seen with A.J. During the night, while everyone
else in the house slept, he removed her clothing from the waist down and touched her genitals with
his fingers. Then, although his friend, A.J.'s grandfather, wanted to talk to him, he left the house
in the middle of the night without a word to anyone. This is sufficient evidence from which the jury
could conclude Appellant touched A.J. with the requisite specific intent to arouse or gratify his
sexual desire. Id. Accordingly, the evidence is legally sufficient to support the conviction and the
trial court did not err in denying Appellant's motion for directed verdict. We overrule Appellant's
first and sixth issues.


Factual Sufficiency

 In his second and third issues, Appellant attacks the factual sufficiency of the evidence to
support his conviction. He asserts the evidence is factually insufficient because the alleged victim
was the only eyewitness and her trial testimony was inconsistent with her prior statements which
were made only a few hours after the alleged attack. Specifically, in the videotape, the child first
denied the assault occurred but then, in response to intense leading questions, stated that a black man
may have touched her. Appellant notes that he is Caucasian. Also, the child said at trial that she was
wearing a nightgown but in the videotape she said she had on a shirt and shorts. Further, she said
the attack occurred in the living room and her grandmother indicated it occurred in a bedroom. 
Finally, Appellant asserts that the indictment alleged the offense occurred on or about May 21, 1999,
while the nurse who performed the sexual assault exam, Tammy Ford, testified that the offense
occurred on November 21 and 22 of that year. 

 When reviewing the factual sufficiency of the evidence we consider whether a neutral review
of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000). We set aside the verdict only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis v. State, 922 S.W.2d
126, 129 (Tex. Crim. App. 1996). In conducting this analysis, our duty is to examine the trier of
fact's weighing of the evidence. Johnson, 23 S.W.3d at 7. We consider all of the evidence in the
record related to an appellant's sufficiency challenge, comparing the weight of the evidence that
tends to prove guilt with the evidence that tends to disprove it. See id. However, because the jury
is the sole judge of the facts, we must give deference to jury findings. Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997). What weight to give contradictory testimonial evidence is within
the sole province of the jury because it turns on an evaluation of credibility and demeanor. Id. at
408-09. The jury may choose to believe some testimony and disbelieve other testimony. Margraves
v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).

 Faye Cantrell testified that when she got up during the night to check on her granddaughter,
the girl was not on the living room pallet where Mrs. Cantrell last saw her. When Mrs. Cantrell
called out her name, A.J., wearing only a shirt, came running from the bedroom when Appellant had
been invited to stay. On the night of the offense, Ms. Fain interviewed A.J., who was just five years
old at the time. A.J. was clearly uncomfortable with the topic of conversation. She sucked her
thumb, hid behind her hands, and fidgeted during the interview. She initially agreed that something
had happened that they needed to talk about but later denied any wrongdoing occurred. Within a few
minutes, however, she admitted that the man at her nanna's house, whom she did not know, removed
her panties and shorts and touched her in her "teetee place" with his fingers.

 At trial, seven-year-old A.J. testified that the man took off her panties and touched her "teetee
spot." The only inconsistency between her videotaped statement and her trial testimony is that at
trial she said she had been wearing a nightgown while in her prior statement she said she was
wearing the shorts she had on during the interview. Mrs. Cantrell, as well as the videotape itself,
confirmed A.J. was wearing shorts on the night of the offense. The jury could have determined this
was an insignificant discrepancy in the child's testimony. See Cain, 958 S.W.2d at 408-09. During
the videotaped interview, five-year-old A.J. attempted to describe the man at her nanna's house
whom she did not know. To describe him she said "he looks different," "he is black," "he did some
bad stuff." The jury might have determined that the man appeared black because no lights were on
or that A.J. was simply mistaken. The jury was entitled to assign little or no weight to that evidence. 
Id. Further, the Cantrells testified that Appellant was the only adult male in the house that night
other than A.J.'s grandfather. Appellant also testified to that fact. 

 Appellant also asserts the testimony is inconsistent as to the exact location of the alleged
assault. A.J. said it occurred in the living room while Mrs. Cantrell's testimony indicates it occurred
in the bedroom. The jury may have determined that, since Mrs. Cantrell was not an eyewitness to
the offense, she did not actually know where the offense occurred. Or, it could have determined that
the offense began in the living room and ended in the bedroom. Alternatively, the jury may have
determined that, even though there seemed to be a discrepancy in the evidence, it is of no
consequence. Id. Certainly, the State need not prove which room the assault occurred in as it is not
an element of the offense.

 Appellant also complains that Tammy Ford, the sexual assault nurse examiner, testified that
the offense occurred on November 21 and 22 of 1999 when the indictment alleges that it occurred
on May 21, 1999. During direct examination of Ms. Ford, the prosecutor asked if she was employed
in the capacity of sexual assault nurse examiner on November 21 and 22 of 1999. She said yes and
he then asked if she had performed an exam on A.J. Technically, the question specifically naming
A.J. did not incorporate the date. However, the evidence shows the correct date of the offense was
May 21, 1999. The Cantrells testified as to the correct date, the videotape identifies the date, the
audiotaped interview of Appellant identifies the correct date, and Appellant identified the correct
date when he testified. The jury could have disregarded the reference to November 21 and 22. Id. 
Further, the State is not bound by the "on or about" date alleged in the indictment. Walker v. State,
4 S.W.3d 98, 104 (Tex. App.-Waco 1999, pet. ref'd). The State could prove a date other than the
date alleged in the indictment where, as here, the date is anterior to the presentment of the indictment
and within the offense's statutory limitation period. Id. 

 The evidence shows that Appellant touched the genitals of five-year-old A.J. at her
grandparents' house on the night of May 21, 1999. The jury could infer the requisite intent from
Appellant's actions. The discrepancies in the testimony noted by Appellant are not significant. Our
neutral review of all the evidence does not demonstrate that the proof of guilt is so obviously weak
as to undermine confidence in the jury's determination of guilt. Further, the proof of guilt is not
outweighed by contrary proof. See Johnson, 23 S.W.3d at 11. We conclude that the jury's verdict
is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See
Clewis, 922 S.W.2d at 129. We overrule Appellant's second and third issues.


The Sentence

 In his fifth issue, Appellant contends the trial court erred in assessing his punishment at
thirteen years of imprisonment when he was eligible for probation. He complains that the charge
provided incomplete instructions on conditions of probation and it included an instruction regarding
parole. He argues that the jury's note to the court, sent during deliberations, indicates its desire to
give him probation and its confusion about how to do so. He asserts that the trial court's refusal to
further instruct the jury on the mechanics of how to assess a sentence which would be probated
resulted in an unfair punishment. Further, he contends the evidence is insufficient to support the
sentence in light of his criminal history which reflects only two prior misdemeanor charges and no
felonies.

 We note that Appellant failed to cite to any authority in his discussion under this issue as
required by the rules. Tex. R. App. P. 38.1(h). Therefore, he has presented nothing for review. 
Rocha v. State, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000). However, we will address the merits of
the complaints.

 The charge instructed the jury that in fixing the defendant's punishment, it may take into
consideration all the facts shown by the evidence admitted at trial and the law as submitted in the
charge. The jury charge included an instruction correctly setting out the applicable punishment range
for the offense of indecency with a child, a second degree felony, which is two to twenty years of
imprisonment and a fine of up to $10,000.00. Tex. Pen. Code Ann. § 12.33 (Vernon 1994). It also
included an instruction explaining that, if the defendant is sentenced to a term of ten years or less,
the jury may recommend probation. It further instructed the jury that its verdict must show the
punishment it assesses and, if the jury recommends probation for any term of ten years or less, it
must also show the period of probation which the jury recommends the defendant should serve, not
to exceed ten years. 

 During its deliberations on punishment, the jury sent a note to the trial court: "If we give ten
years probation what is the max. time served if he breaks probation. How do you determine how
many years served if he breaks probation. For instance: if 5 years into his probation he breaks it
what time will he serve?" The trial judge's response merely referred the jury to the instructions in
the charge.

 After the jury retires to deliberate, the trial court can give additional jury instructions in
writing and, to the extent possible, with the defendant and his counsel present in order to make
objections. Tex. Code Crim. Proc. Ann. art. 36.27 (Vernon 1981). If the request from a jury for
additional instructions is not proper, the court should refer the jury to the court's charge. Ash v.
State, 930 S.W.2d 192, 196 (Tex. App. - Dallas 1996, no pet.). Here, the judge gave the correct
instructions with regard to a jury's recommendation for probation and the charge adequately
protected Appellant's rights. See Kenner v. State, 589 S.W.2d 403, 409 (Tex. Crim. App. 1979). 
Accordingly, it was unnecessary for the judge to give additional instructions to the jury. 

 Further, the jury's question asked for information on an issue not before it: sentencing after
probation revocation. After revocation, the judge may proceed to dispose of the case as if there had
been no community supervision. Tex. Code Crim. Proc. Ann. art. 42.12, § 23(a) (Vernon Supp.
2003). In other words, the judge may impose the sentence originally assessed. Guzman v. State,
923 S.W.2d 792, 799 (Tex. App. - Corpus Christi 1996, no pet.). However, the issue of the
assessment of a sentence after revocation is not before the jury determining the original sentence of
a defendant. Finally, as the jury assessed a sentence greater than ten years of imprisonment,
probation was not an option. Therefore, Appellant's complaint is moot. Higginbotham v. State, 769
S.W.2d 265, 276 (Tex. App. - Houston [14th Dist.] 1898), rev'd on other grounds, 807 S.W.2d 732
(1991).

 Generally, as long as a sentence is within the statutory range, it will not be disturbed on
appeal. Fielding v. State, 719 S.W.2d 361, 366 (Tex. App.-Dallas 1986, pet. ref'd). The sentence
assessed, thirteen years of imprisonment and a $10,000 fine, is within the applicable range. Tex.
Pen. Code Ann. § 12.33. We shall not speculate as to why the jury asked the question it asked. 
Because the sentence is within the statutory range, we will not disturb it. Fielding, 719 S.W.2d at
366. We overrule Appellant's fifth issue.


Jury Charge

 In his seventh issue, Appellant contends the trial court erred in failing to instruct the jury on
the special conditions of sex offender probation. He acknowledges that once the court has charged
the jury on probation as a punishment alternative, it does not need to then provide the jury with a list
of statutory terms and conditions of probation. However, he argues, since the trial court gave a list
of standard probation terms, it was error not to include the terms specifically applicable to sex
offenders. 

 The Code of Criminal Procedure provides a list of basic conditions of community supervision
a trial judge may impose. Tex. Code Crim. Proc. Ann. art. 42.12, § 11 (Vernon Supp. 2003). The
Code specifically mandates two additional conditions to be required of defendants, such as
Appellant, who are required to register as sex offenders under chapter 62 of the Code. Id. at § 11(e). 
In Yarbrough v. State, 779 S.W.2d 844 (Tex. Crim. App. 1989), the court of criminal appeals
directly addressed the question of whether the trial court erred by failing to include in the charge on
punishment all of the statutory terms and conditions enumerated by article 42.12. The court
approved the Dallas Court of Appeals' holding that the trial court did not err by failing to include
all of those statutory terms over objection, overruled a case holding to the contrary, and dismissed
the petition for discretionary review as being improvidently granted. Yarbrough v. State, 742
S.W.2d 62, 64 (Tex. App.-Dallas 1987), pet. dism'd, improvidently granted, 779 S.W.2d 844 (Tex.
Crim. App. 1989). Therefore, we conclude that, here, the trial court did not err in failing to instruct
the jury on the special conditions of sex offender probation. We overrule Appellant's seventh issue.


Ineffective Assistance of Counsel

 In his ninth issue, Appellant contends he received ineffective assistance of counsel. He
complains that trial counsel objected only once during the trial and that trial counsel should have
objected to the admissibility of the videotape, the competency of the child to testify, the interviewer's
lack of qualifications, the videographer's lack of ability, and to the violations of article 38.071. 
Appellant also contends trial counsel was deficient in failing to obtain rulings on his request for
notice of extraneous offenses and failed to object to the admission of extraneous offenses during the
punishment stage. He also asserts counsel was ineffective because he failed to request a jury
instruction informing the jury that any extraneous offenses presented by the State must be proven
beyond a reasonable doubt and an instruction regarding the special conditions imposed upon sex-offender probationers. Appellant also complains that trial counsel did not voir dire the jury panel
on the impact and consideration of an alleged child victim's testimony nor did he ascertain the
potential jurors' feelings and opinions regarding child witnesses so as to prevent automatic
assignment of credibility thereto. Finally, Appellant asserts that trial counsel's performance taken
as a whole falls below acceptable standards of effective assistance of counsel which resulted in a
different verdict than would have occurred had he received adequate representation.

 The United States Supreme Court has established a two-part test, also adopted by Texas
courts, to determine whether the representation of counsel was effective. The defendant must show
that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is
a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings
would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S. Ct. 2052, 2064,
80 L. Ed. 2d 674 (1984); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). A
"reasonable probability" was defined by the Supreme Court as a "probability sufficient to undermine
confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Counsel is strongly
presumed to have rendered adequate assistance and to have made all significant decisions in the
exercise of reasonable professional judgment. See Hernandez, 726 S.W.2d at 55. Absent a showing
of both prongs of the Strickland test, this Court cannot conclude that a defendant's conviction
resulted from a breakdown in the adversarial process such that it rendered the result unreliable. 
Strickland, 466 U.S. at 687; 104 S. Ct. at 2064. After proving error, the appellant must affirmatively
prove prejudice. Burruss v. State, 20 S.W.3d 179, 186 (Tex. App.-Texarkana 2000, pet. ref'd). The
appellant must prove that his attorney's errors, judged by the totality of the representation and not
by isolated instances of error, denied him a fair trial. Id. Claims of ineffective assistance of counsel
must be supported by the record. See Mercado v. State, 615 S.W.2d 225, 228 (Tex. Crim. App.
[Panel Op.] 1981). 

 As explained above, the videotape was admissible, the child was competent to testify, and
article 38.071 does not apply in this case. Extraneous offense evidence is admissible at the
punishment phase. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2003). The
failure to object to admissible evidence is not ineffective assistance of counsel. See Burrus, 20
S.W.3d at 188. Therefore, counsel did not err in failing to object to admission of the videotape,
A.J.'s competency to testify at trial, the failure of the State to comply with the requirements of article
38.071, or the extraneous offense evidence offered at the punishment phase. No extraneous offenses
were presented during the guilt/innocence phase; therefore, there was nothing for the State to notify
Appellant of and there can be no harm from the trial court's failure to rule on the motion for notice. 
The charge given to the jury at the punishment phase includes an instruction that extraneous offenses
must be proven beyond a reasonable doubt. Further, as discussed above, an instruction regarding
the special conditions imposed upon sex offender probationers is unnecessary.

 Regarding trial counsel's performance during voir dire, we must consider the entire voir dire. 
See Bone v. State, 77 S.W.3d 828, 834 n.15 (Tex. Crim. App. 2002). The prosecutor asked the panel
if anyone would hold it against the State for presenting a witness who is a child or hold it against the
defense for cross-examining a witness who is a child. There was no response. Noting that children
do not testify as adults do because they are limited by age, maturity, language, and terminology, the
prosecutor then asked the panel if anyone would automatically believe or automatically disbelieve
a child witness. There was no response and the prosecutor commented that by their silence he
assumed they would be able to judge the credibility of a child witness. It was unnecessary for
counsel for the defense to repeat that line of questioning. Id. 

 After considering trial counsel's performance, and particularly Appellant's specific
complaints, we determine that Appellant has not shown that trial counsel's representation fell below
an objective standard of reasonableness. Therefore, Appellant has not met the first prong of the
Strickland test. Strickland, 466 U.S. at 687-88, 104 S. Ct. at 2064. Accordingly, Appellant has not
shown he received ineffective assistance of counsel at trial. We overrule Appellant's ninth issue.

Conclusion

 Appellant has presented no error on the part of the trial court and has not shown trial counsel
was ineffective. The evidence is sufficient to support Appellant's conviction and sentence. 
Accordingly, we affirm the trial court's judgment.




 SAM GRIFFITH 

 Justice



Opinion delivered January 22, 2003.

Panel consisted of Worthen, C.J., and Griffith, J.

















(DO NOT PUBLISH)
1. In this opinion, we use the victim's initials instead of her name.