

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00182-CR

_____

ROBERT BRYAN FINCH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 25677

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Moseley

# MEMORANDUM OPINION

After Robert Bryan Finch was found guilty by a Lamar County jury of theft of property and was shown to have two prior theft convictions, he was sentenced to serve two years in state jail. Finch has appealed, asserting that the trial court erred in not granting a mistrial after some jurors saw him in shackles outside the courtroom before the trial commenced. He also asserts that the trial court abused its discretion in allowing his mother to testify during the punishment phase in violation of "the Rule."[1] Finding no error, we affirm the judgment of the trial court.

## I. There Was No Abuse of Discretion in Not Granting a Mistrial

Before jury selection began, between twenty and thirty people (at least some of whom were members of the jury panel) were standing in the second floor foyer outside of the courtroom as Finch was being transported from the Lamar County jail to the courtroom in handcuffs and shackles.[2] During this time, Finch (accompanied by Lamar County Deputy Sampson Peralta) exited the second floor elevator into the foyer in front of the courtroom. Peralta led Finch past the panel members in the foyer and through a door next to the bailiff's office. During this time, Finch was potentially in view of the panel members standing in that foyer for approximately thirteen seconds.

---

[1]Courts and attorneys everywhere in Texas make reference to "the Rule" as if there were only one of them. However, "the Rule" to which reference is commonly made and to which reference is made here is Rule 614 of the Texas Rules of Evidence as set out further in Articles 36.03 and 36.05 of the Texas Code of Criminal Procedure. *See* TEX. R. EVID. 614; TEX. CODE CRIM. PROC. ANN. arts. 36.03, 36.05 (West 2007).

[2]Also variously referred to as "leg manacles," "leg cuffs," "leg irons," "chains," and "ankle bracelets." Finch was not dressed in jail attire.

Before jury selection began, Finch cited this incident and moved for a mistrial on the basis that his exposure to the jury panel under such conditions would impair his ability to receive a fair trial. A hearing was held, during which Peralta testified that there were more than twenty people in the foyer when he took Finch through it and that they would have been able to see that Finch was handcuffed and shackled. However, Peralta indicated that he did not know how many of the people in the foyer were members of the jury panel or if they actually saw Finch. After Peralta's testimony, the trial court had the jury panel come into the courtroom[3] and asked the panel members who had seen Finch walking from the elevator to the bailiff's office to identify themselves. The trial court then asked the other panel members to wait outside. Each of the twenty members of the jury panel who acknowledged having seen Finch in the foyer was then examined by the trial court, the State, and Finch to confirm that they saw Finch in handcuffs and shackles. The twenty members were then severally instructed that Finch was still presumed innocent until his guilt was proven beyond a reasonable doubt. Most of the jury panel members (including the five that eventually were selected to sit on the jury) testified that seeing him in handcuffs and shackles would not affect their deliberation of his guilt or innocence. The trial court excused one panel member who indicated he was not certain if it would affect his deliberations. After examining each individually, the trial court admonished the group that they were not to draw any inference in regard to any issue, whether regarding guilt/innocence or punishment, from the fact that Finch had been handcuffed and shackled. The court also instructed them that handcuffing and shackling for

---

[3]There is no contention made that Finch was either handcuffed or shackled in the courtroom at any time when members of the jury panel were present.

transportation is a reasonable precaution for law enforcement officers to take that does not reflect on the presumption of innocence. The court further emphasized that Finch was presumed innocent and that the State had the burden to prove his guilt beyond a reasonable doubt. The panel members affirmed that they would follow these instructions. Finch then renewed his motion for mistrial outside the hearing of the jury, a motion which the trial court denied.

In his first point of error, Finch complains that the trial court erred in failing to grant a mistrial under the circumstances that were described. We review a trial court's denial of a mistrial under an abuse-of-discretion standard. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009); *Sanders v. State*, 387 S.W.3d 680, 687 (Tex. App.—Texarkana 2012, pet. ref'd, untimely filed). We consider "the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling." *Ocon*, 284 S.W.3d at 884 (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). If the ruling was within the zone of reasonable disagreement, it must be upheld. *Id.*; *Sanders*, 387 S.W.3d at 687. Mistrial is only an appropriate remedy when the error is highly prejudicial and incurable. *Ocon*, 284 S.W.3d at 884 (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)).

Finch argues that his rights to a fair trial and due process, guaranteed by the United States[4] and Texas[5] Constitutions, were violated by allowing members of the jury to see him in handcuffs and shackles. We agree with Finch that when jurors see a defendant in handcuffs and shackles, "his presumption of innocence is seriously infringed." *Cooks v. State*, 844 S.W.2d 697, 722 (Tex.

---

[4]*See* U.S. CONST. amends. V, XIV, § 1.

[5]*See* TEX. CONST. art. I, § 19.

4

Crim. App. 1992) (citing *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991)). For this reason, trial courts are required to make all efforts to prevent the jury from seeing the defendant in the courtroom restrained in handcuffs and shackles, unless there is a showing of exceptional circumstances or a manifest need for restraint. *Cooks*, 844 S.W.2d at 722; *Long v. State*, 823 S.W.2d 259, 282 (Tex. Crim. App. 1991); *Mendoza v. State*, 1 S.W.3d 829, 831 (Tex. App.—Corpus Christi 1999, pet. ref'd).

However, different rules apply when jurors see the defendant in handcuffs or shackles outside the courtroom than those that apply to in-courtroom observations.[6] *Pina v. State*, 38 S.W.3d 730, 741 (Tex. App.—Texarkana 2001, pet. ref'd); *see Hernandez v. State*, 805 S.W.2d 409, 415 (Tex. Crim. App. 1990) (holding that rule requiring trial court to state on the record why restraint is required only applies when shackles are used "*in the courtroom in front of the jury*"). "If such encounters are inadvertent, fortuitous, and away from the courtroom, there is no error." *Pina*, 38 S.W.3d at 741 (citing *Hernandez*, 805 S.W.2d at 415); *see Clark v. State*, 717 S.W.2d 910, 919 (Tex. Crim. App. 1986). Further, in those cases where jurors have seen a defendant either in jail garb or in shackles, any error can be cured by an appropriate instruction. *See Wright v. Texas*, 533 F.2d 185, 187 (5th Cir. 1976) (jury panel may have seen defendant in handcuffs during jury selection, but not during trial); *Lyons v. State*, 668 S.W.2d 767, 769 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd) (jurors saw defendant in handcuffs stepping off elevator and being escorted to holding room); *see also Garza v. State*, 10 S.W.3d 765, 767–68 (Tex. App.—Corpus

---

[6]Finch argues the incident was not "away from the courtroom" since it took place in the foyer adjoining the courtroom. However, our courts clearly view this as "away from the courtroom." *Lovely v. State*, 894 S.W.2d 99, 103 (Tex. App.—Beaumont 1995, pet. ref'd) (hallway adjacent to courtroom considered "away from the courtroom").

Christi 2000, pet. ref'd) (where, prior to voir dire, defendant brought into courtroom in shackles in presence of twenty panel members, any error waived when, *inter alia*, defendant failed to request limiting instruction); *Green v. State*, 829 S.W.2d 938, 939 (Tex. App.—Fort Worth 1992, no pet.) (per curiam) (defendant seen walking down hall in jail clothing, handcuffs, and shackles by jurors; court of appeals noted defendant failed to request a no-inference instruction).

In this case, Finch was seen only momentarily and inadvertently in handcuffs and shackles (while not wearing jail clothing) by twenty panel members, five of whom were subsequently seated on the jury. Prior to jury selection, each of the five who were chosen to sit on the jury testified that seeing Finch restrained in that fashion would not influence their deliberations. Further, any potential error was cured when the trial court gave an appropriate no-inference instruction. No contention is made that Finch was ever restrained in the courtroom in the presence of the jury. Under these circumstances, we find that the trial court did not abuse its discretion in not granting a mistrial. Therefore, we overrule this point of error.

## II.  There Was No Abuse of Discretion in Allowing Finch's Mother to Testify

Before testimony began, Finch invoked the Rule. The trial court summoned all of the witnesses and admonished them regarding the requirements of the Rule.[7] Among the witnesses

---

[7]The trial court admonished the witnesses as follows:

> The Rule has been invoked in this case, and what that remain -- what that means is each of you is going to have to remain outside of the courtroom until it is your turn to testify in the case. And the reason we do that is we want to know what you know, not what you think you may have heard and not what you think that we need to hear. So, here in a minute I'll swear you in and I'll ask you to step out into the lobby.
>       While you're waiting to testify, please do not discuss this case with anyone and don't let anyone discuss this case with you. Don't let anyone discuss this case around you. If someone tries to talk to you about the case, please report it to me immediately by telling my bailiff. Does everyone understand?

was Finch's mother, Angie Rosson (Angie). After the jury had found Finch guilty of the charged offense, the State called Kristin Rosson (Kristin), the wife of Finch's cousin, at the beginning of the punishment phase of the trial. Kristin testified regarding an alleged theft of her husband's power drill, which had been taken from their garage on July 20, 2013. At the time, she told the police she thought Finch had taken the drill since he was one of the few people who knew that they had one. Kristin's husband, Terry, testified that earlier in the month of the trial, he had seen the drill at Seay's pawnshop in Paris and notified a detective with the Paris Police Department. Detective Derek Belcher then testified that he had gone to Seay's pawnshop earlier in the month after being notified of Terry's contact. Belcher went to the pawnshop, photographed the drill, and placed a hold on it. Then he looked up the pawn ticket, which indicated the drill had been pawned by Angie. He also testified that he had interviewed Angie about the pawn ticket. The State called Angie as its next witness, and the following exchange took place:

> [THE STATE]: At this time the State calls Angie Rosson.
>
> THE COURT: All right. Ms. Rosson?
>
> [DEFENSE COUNSEL]: She should be outside, Your Honor.
>
> THE COURT: She was around here a moment ago.
>
> [THE STATE]: No, she's right there.

---

(The Witnesses responded in the affirmative.)

. . . . A violation of this Rule can result in you being held in contempt, which means I could put you in jail for up to six months and I could fine you up to $500. I certainly don't want to do that today, but I will tell you that if I do find that you violated the Rule[,] I will not consider your testimony and I will not let the jury hear your testimony for any reason. Does everyone understand?

(The Witnesses responded in the affirmative.)

7

[DEFENSE COUNSEL]: Oh, is she? Well, then she's in violation of the Rule, Your Honor. We'd object to any testimony of this woman. We put her under the Rule.

THE COURT: And she's been sitting here since the punishment phase began.

[DEFENSE COUNSEL]: She's been sitting here apparently when --

THE COURT: She's your -- she's your witness.

[DEFENSE COUNSEL]: I understand, Your Honor, but she's calling the witness, and this was one of the reasons I wanted her under the Rule.

THE COURT: I know, but she's been sitting right behind your client for the better part of the past hour.

[DEFENSE COUNSEL]: And I was not aware of it, Your Honor.

THE COURT: I'm going to overrule the objection.

Angie testified that she had received a call from Finch on the day in question and picked him up a few blocks from Terry's house. At the time Angie picked him up, Finch had the drill in his possession and asked her to pawn it for him since he did not have proper identification.

In his second point of error, Finch asserts that the trial court erred when it allowed Angie to testify in violation of the Rule. Upon a request by a party, the Texas Rules of Evidence require the trial court to exclude witnesses "so that they cannot hear the testimony of other witnesses." TEX. R. EVID. 614. This witness sequestration rule, commonly referred to simply as "the Rule," is mandatory, and a trial court errs if it fails to enforce it. *Bryant v. State*, 282 S.W.3d 156, 161 (Tex. App.—Texarkana 2009, pet. ref'd); *see Russell v. State*, 155 S.W.3d 176, 181 (Tex. Crim. App. 2005). We review a trial court's admission of testimony from a witness who has violated the

Rule's exclusion requirement under an abuse-of-discretion standard. *Guerra v. State*, 771 S.W.2d 453, 474 (Tex. Crim. App. 1988); *Bryant*, 282 S.W.3d at 161.

In *Guerra*, the Court of Criminal Appeals set forth a two-step process for determining whether the trial court abused its discretion in allowing testimony in violation of the Rule. *Guerra*, 771 S.W.2d at 475–76; *Minor v. State*, 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref'd); *Loven v. State*, 831 S.W.2d 387, 399 (Tex. App.—Amarillo 1992, no pet.). First, we must determine the category of the testifying witness. *Guerra*, 771 S.W.2d at 476; *Minor*, 91 S.W.3d at 830; *Loven*, 831 S.W.2d at 399. The first category is a witness "who had no connection with either the State's case-in-chief or the defendant's case-in-chief and who, because of a lack of personal knowledge regarding the offense, was not likely to be called as a witness." *Guerra*, 771 S.W.2d at 476. There is no abuse of discretion when this category of witness is allowed to testify. *Id.*; *Minor*, 91 S.W.3d at 830; *Loven*, 831 S.W.2d at 399. The second category of witness is "one who had personal knowledge of the offense and who the party clearly anticipated calling to the stand." *Guerra*, 771 S.W.2d at 476; *Minor*, 91 S.W.3d at 830; *Loven*, 831 S.W.2d at 399. If the witness is a category two witness, then we proceed to the second step. *Guerra*, 771 S.W.2d at 476. On the other hand, if the witness is of the first category, we need not consider the second step. *See id*. In the second step, we apply two criteria to determine whether the defendant was harmed by the violation of the Rule:

> (1) "[D]id the witness actually hear the testimony or confer with another witness without court permission[?]" and

> (2) "Did the witness's testimony contradict the testimony of a witness he actually heard from the opposing side or corroborate the testimony of another

9

witness he actually heard from the same side on an issue of fact bearing upon the issue of guilt or innocence?"

*Id.* at 475 (quoting *Archer v. State*, 703 S.W.2d 664, 666 (Tex. Crim. App. 1986)).

Neither Finch nor the State address to which of the above categories Angie belongs; rather, both assume she belongs to the second category and base their arguments on that assumption. The confusion may spring from the fact that Angie testified during the punishment phase regarding an extraneous *uncharged* offense. Arguably, she had personal knowledge of an offense, but not the offense for which Finch was on trial. However, we believe that when the Texas Court of Criminal Appeals referred to a witness having "personal knowledge of *the* offense[,]" it was referring to the *charged* offense, not an extraneous act. *See id.* at 476 (emphasis added); *Pompa v. State*, No. 13-12-00522-CR, 2014 WL 4049880, at *2 (Tex. App.—Corpus Christi Aug. 14, 2014, no pet.) (mem. op., not designated for publication).[8]

In *Pompa*, the trial court allowed the State's investigator, Schlinger, to testify in the punishment phase over the defendant's objection that Schlinger had violated the Rule. *Pompa*, 2014 WL 4049880 at *1. Schlinger testified regarding an extraneous sexual act that the defendant performed on his younger sister. *Id.* at *2. In determining that Schlinger was a category one witness, the appellate court pointed out that his testimony was during the punishment phase and was related to an uncharged extraneous act. His testimony did not regard the defendant's guilt or innocence, an issue of which he "had no personal knowledge of the offense for which [the defendant] was charged." *Id.* Therefore, he was determined to be a category one witness; this

---

[8]Although an unpublished case has no precedential value, we may take guidance from it "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

meant that there was no abuse of discretion in permitting his testimony. *Id.* Other courts of appeals have also determined that a witness testifying in the punishment phase who has no personal knowledge of the charged offense is a category one witness. *See Bodiford v. State*, No. 05-04-00231-CR, 2004 WL 2601661, at *4 (Tex. App.—Dallas Nov. 17, 2004, no pet.) (not designated for publication) (defendant's mother, who testified in punishment phase after attending and hearing all testimony in punishment phase determined to be category one witness since she lacked knowledge of charged offense); *Young v. State*, No. 01-03-00167-CR, 2004 WL 1119962, at *2 (Tex. App.—Houston [1st Dist.] May 20, 2004, pet. ref'd) (mem. op., not designated for publication) (deputy who attended guilt/innocence phase and testified in punishment phase but had no knowledge of charged offense determined to be category one witness); *Walker v. State*, 2 S.W.3d 655, 658 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (deputy who attended guilt/innocence phase and testified in punishment phase regarding threat made by defendant but had no knowledge of charged offense determined to be category one witness); *Upton v. State*, 894 S.W.2d 426, 428 (Tex. App.—Amarillo 1995, pet. ref'd) (witness testifying in punishment phase who attended guilt/innocence phase determined to be category one witness since she had no knowledge of charged offense).

In this case, we find that Angie was a category one witness. Although she was identified by the State as a witness, no contention is made, and there is no evidence in the record to support the contention, that she had any personal knowledge of the charged offense. She only testified after Finch had been found guilty, during the punishment phase, so her testimony was not necessary to the State's case-in-chief. Finally, her testimony on behalf of the State related only to

an extraneous act of Finch's for punishment purposes. Under these facts, we find that the trial court did not abuse its discretion in allowing her to testify.[9] We overrule this point of error.

We affirm the judgment of the trial court.


Bailey C. Moseley
Justice

Date Submitted: May 7, 2015
Date Decided: May 19, 2015

Do Not Publish

---

[9]We also note that even if Angie were found to be a category two witness, Finch failed to carry his burden to show that Angie actually heard the testimony of the other witnesses. *See Bryant*, 282 S.W.3d at 162–63. Although the record shows that Angie was present during the testimony of other witnesses in the punishment phase, it is not established that she actually *heard* their testimony. Finch never questioned her about what she heard the other witnesses say. Further, at the beginning of her questioning by the State, she testified as follows:

> Q. You just saw Detective Belcher take the stand, ma'am; is that correct?
>
> A. Yes, I saw that.
>
> . . . .
>
> Q. And you -- you heard him state that he spoke to you regarding a drill that was pawned; is that correct?
>
> A. I really couldn't hear anything that he said.
>
> Q. Well, did --
>
> A. I -- I can't hear in here.

Thus, the record indicates that she was present for but could not hear the prior testimony. To establish harm, Finch had the burden to establish both prongs of the second step. *See id.* at 162 (citing *Taylor v. State*, 173 S.W.3d 851, 853 (Tex. App.—Texarkana 2005, no pet.)). Since he failed to establish the first prong, no harm has been shown. *See id.* at 162–63.