NO. 12-03-00253-CR

IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
 
MELISSA FRIZZELL                                       §                 APPEAL FROM THE 114TH
APPELLANT
 
V.                                                                         §                 JUDICIAL DISTRICT COURT OF

THE STATE OF TEXAS,
APPELLEE                                                        §                 SMITH COUNTY, TEXAS

                                                                                                                                                            

MEMORANDUM OPINION

          A jury convicted Appellant Melissa Frizzell of first-degree felony possession of a controlled
substance. The court assessed her punishment at imprisonment for fifty years and a $10,000 fine. 
Appellant raises three issues on appeal. We affirm.
 
Background
            On April 2, 2002, Smith County Detective Tammye Maclin (“Maclin”) and Karen Hudson
(“Hudson”), a caseworker with the Texas Department of Protective and Regulatory Services, went
to the home of Appellant. Hudson had been investigating the Frizzell home for child abuse and
neglect after she had interviewed Appellant’s children at their schools.
            Upon arriving at the Frizzell mobile home, Maclin and Hudson spoke to Appellant’s
husband, James Frizzell (“James”). Although James first stated that Appellant was not there, Maclin
later determined that Appellant was at the mobile home. According to Maclin, Appellant appeared
to be “malnourished, maybe a little sleep deprived.” Maclin and Hudson did not have a search
warrant, but obtained written consent to search the home. Maclin testified that the mobile home was
“cluttered, not very clean.” The home consisted of three bedrooms, a living room, and a kitchen. 
The master bedroom contained syringes, razor blades, crack pipes, chemicals, pills, acid, batteries,
and some small baggies containing residue. One of the other two bedrooms had a strong, bad odor
that Appellant said might be caused by a dead rabbit. In the living room, Maclin found a brown
pouch on the sofa, which contained a plastic bag of what she believed to be methamphetamine and
some small scales.
            Maclin went into the backyard and found raw sewage, children’s play equipment, and
chemicals such as camp fuel and starter fluid. At this point, Maclin summoned Department of Public
Safety officials to the residence. DPS Sergeant Kenneth Bond (“Bond”) arrived at Appellant’s
residence and searched the residence and the outside area. During the search, Bond observed a
variety of ingredients used to manufacture methamphetamine. He also found some actual
methamphetamine in the master bedroom and living room and outside by the back door.
            Appellant was charged by indictment with possession of a controlled substance, and the
matter proceeded to a jury trial. The jury convicted Appellant of first-degree felony possession of
more than 400 grams of methamphetamine. The court assessed her punishment at fifty years of
imprisonment and a $10,000 fine. This appeal followed.
 
Applicable Law
            Under Section 481.115(a) of the Texas Health and Safety Code, a person commits an offense
if the person “knowingly or intentionally possesses a controlled substance listed in Penalty Group
1.” See Tex. Health & Safety Code Ann. § 481.115(a) (Vernon 2003). Methamphetamine is
included in Penalty Group 1. See id. § 481.102(6). If the amount of aggregate weight, including
adulterants and dilutants, is 400 grams or more, the offense is punishable by imprisonment for life
or for a term of not more than 99 years or less than 10 years and a fine not to exceed $100,000.00. 
See id. § 481.115(f).
            A person commits the offense of possession of methamphetamine if she knowingly or
intentionally possesses the controlled substance. See id. §§ 481.102(6), 481.115(a). Possession is
defined as “actual care, custody, control, or management.” Id. § 481.002(38). 
            The ultimate consequence is that each defendant must be affirmatively linked with the drugs
she allegedly possessed, but this link need no longer be so strong that it excludes every other
outstanding reasonable hypothesis except the defendant’s guilt. See Brown v. State, 911 S.W.2d
744, 748 (Tex. Crim. App. 1995). Knowledge can be inferred from the conduct of and remarks by
the accused and from circumstances surrounding the acts engaged in by the accused. Menchaca v.
State, 901 S.W.2d 640, 652 (Tex. App.–El Paso 1995, pet. ref’d).
 
Legal Sufficiency
            In her first issue, Appellant contends the evidence is legally insufficient to support her
conviction for possession of 400 grams or more of a controlled substance, methamphetamine. 
Specifically, Appellant argues that there is no legitimate proof that the 654.34 grams of contraband
on the back porch of the mobile home was truly methamphetamine and that there is no proof linking
the substance found to Appellant.
            Appellant maintains that the 654.34 grams of methamphetamine found outside the back door
of the mobile home was “bones,” the by-product remaining when the usable methamphetamine is
extracted from the cooked-out mixture. In summary, Appellant contends that the substance was not
in any meaningful sense methamphetamine. However, Appellant admits that the 654.34 grams of
substance may have contained an “extraordinarily small amount” of methamphetamine, but contends
that it was not in a form that could be bought or sold.
Standard of Review
            Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307, 315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d 1, 6 (Tex.
App.–San Antonio 1999, no pet.). The standard for reviewing a legal sufficiency challenge is whether
any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. See Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; see also Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The
evidence is examined in the light most favorable to the jury’s verdict. See Jackson, 443 U.S. at 319,
99 S. Ct. at 2789; Johnson, 871 S.W.2d at 186. A successful legal sufficiency challenge will result
in rendition of an acquittal by the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S.
Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).
            The trier of fact, here the jury, is the exclusive judge of the credibility of witnesses and of the
weight to be given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). 
The jury is entitled to draw reasonable inferences from the evidence. Benavides v. State, 763 S.W.2d
587, 588-89 (Tex. App.–Corpus Christi 1988, pet. ref’d). Likewise, reconciliation of conflicts in the
evidence is within the exclusive province of the jury. Margraves v. State, 34 S.W.3d 912, 919 (Tex.
Crim. App. 2000); Losada v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). Although an
appellate court’s analysis considers all the evidence presented at trial, it may not “re-weigh the
evidence and substitute [the appellate court’s] judgment for that of the jury.” King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000).
The Evidence
            Claybon Cloud (“Cloud”) was the chemist for the DPS who testified during the trial regarding
his analysis of the drugs seized from the mobile home. He analyzed the contents of three plastic
baggies seized from the master bedroom and the living room. He explained that the first two baggies
tested contained trace amounts of methamphetamine. The third baggie contained 0.40 grams of
methamphetamine. Cloud also examined State’s Exhibit 64-G, which contained the 654.34 grams
of methamphetamine found outside by the back door. He stated that he did not know whether the
654.34 grams could be used to create more methamphetamine or whether another substance could
be added to the 654.34 grams to create more methamphetamine.
            The prosecutor’s examination of Cloud regarding State’s exhibit 64-G included the following
exchange:
 
Q.State’s Exhibit 64-G, your Exhibit Number 3, what - - first of all, what is the weight of this
without the packaging?
 
A.Without the packaging, the powder - - not all of those paper towels and things, it weighed
roughly 600 - - well, it weighed 654.34 grams.
 
Q.And that’s the substance alone without the packaging?
 
A.That’s right.
 
Q.Is that over 400 grams?
 
A.Yes, sir.
 
Q.What does the substance contain that’s in State’s Exhibit 64-G?
 
A.It contains methamphetamine.
 
Q.Does it contain methamphetamine, including any adulterants and dilutants?
 
A.Yes, sir. That includes adulterants and dilutants.
 
 
On cross-examination, Appellant’s attorney attempted to further define Cloud’s analysis as follows:
 
Q.(By defense counsel) And you indicated you did have sort of a hard time finding any
methamphetamine in that exhibit.
 
A.Oh, I didn’t have a hard time. I just had to go back and - - see, what happens when you get
something like guaifenesin is it presents a little problem to you because you can’t immediately
see the methamphetamine.
 
 
            At no time during the examination did Cloud ever distinguish or quantify “bones” from the
methamphetamine. Indeed, he indicated that such a distinction was not possible. Cloud’s testimony
established that State’s exhibit 64-G contained methamphetamine, including adulterants and dilutants.
            Appellant contends that State’s exhibit 64-G was discarded, used up, and of no use to anyone. 
The argument here is that the State cannot rely on the total calculated weight of the exhibit to prove
the weight of the controlled substance, including adulterants and dilutants. This argument may have
had merit prior to 1997. However, in 1997, the definition of “controlled substance” was amended by
the Texas Legislature to add the phrase “an adulterant, and a dilutant” to the definition. The new
definition states that “‘[c]ontrolled substance’ means a substance, including a drug, an adulterant, a
dilutant, and an immediate precursor. . . .” Act of May 23, 1997, 75th Leg., R.S., ch. 745, § 1, 1997
Tex. Gen. Laws 2411, amended by Act of May 22, 2001, 77th Leg., R.S., ch. 1188, § 1, 2001 Tex.
Gen. Laws 2691. The Seventy-Fifth Legislature also added the following sentence: “The term
includes the aggregate weight of any mixture, solution, or other substance containing a controlled
substance.” Act of May 23, 1997, 75th Leg., R.S., ch. 745, § 1, 1997 Tex. Gen. Laws 2411 (codified
as an amendment of Tex. Health & Safety Code Ann. § 481.002(5)); see Jackson v. State, 94
S.W.3d 46, 48 (Tex. App.–Tyler 2002, pet. ref’d). By this addition, the legislature expanded the
definition of a “controlled substance” to include the terms “adulterant” and “dilutant.”
            The evidence before the jury in the instant case was that the substance found by the back door
was methamphetamine, but was mixed with other substances. Cloud testified that the weight of the
substance was 654.34 grams of methamphetamine. Using the expanded definition of “controlled
substance,” the trial court correctly charged the jury in the jury charge. Based on the evidence
presented, the jury found Appellant guilty as charged.



            Viewing the evidence in the light most favorable to the verdict, we hold that there was legally
sufficient evidence upon which the jury, as the trier of fact, could have found the essential elements
of the crime beyond a reasonable doubt. Appellant’s first issue is overruled.
 
Factual Sufficiency
            In her second issue, Appellant contends that the evidence is factually insufficient to support
the jury verdict. Appellant’s argument is that there are no adequate affirmative links supporting the
jury’s verdict that she was in possession of the 654.34 grams of methamphetamine. Specifically,
Appellant argues that the only link between the Appellant and the contraband is that she lived in the
mobile home where the contraband was found. The State argues that her presence at the mobile
home, combined with certain other facts that indicate her participation in possessing the
methamphetamine, show that she is guilty of possession.
Standard of Review
            When reviewing the factual sufficiency of the evidence, we review all of the evidence, but not
in the light most favorable to the prosecution. Johnson, 23 S.W.3d at 7; Cain v. State, 958 S.W.2d
404, 407 (Tex. Crim. App. 1997). We must determine whether a neutral review of all the evidence,
both for and against the finding, demonstrates that a rational jury could find guilt beyond a reasonable
doubt. Zuniga v. State, No. 539-02, 2004 WL 840786, at *7 (Tex. Crim. App. Apr. 21, 2004). 
Evidence is factually insufficient when evidence supporting the verdict, considered by itself, is too
weak to support the finding of guilty beyond a reasonable doubt. Id. Evidence is also factually
insufficient when contrary evidence is so strong that the beyond-a-reasonable-doubt burden of proof
could not have been met. Id. The jury is the sole judge of the weight and credibility of witness
testimony. Wesbrook v. State, 29 S.W.3d 103, 112 (Tex. Crim. App. 2000).
Possession of a Controlled Substance
            When the defendant is not in exclusive possession or control of the place where the
contraband is found, the State must prove independent facts and circumstances affirmatively linking
her to the contraband. See Hackleman v. State, 919 S.W.2d 440, 444 (Tex. App.–Austin 1996, pet.
ref’d, untimely filed). An affirmative link generates a reasonable inference that the accused knew of
the contraband’s existence and exercised control over it. By either direct or circumstantial evidence,
the State “must establish, to the requisite level of confidence, that the accused’s connection with the
drug was more than just fortuitous.” Brown, 911 S.W.2d at 747; see Menchaca, 901 S.W.2d at 651.
            Appellant was not in exclusive control of the residence where the methamphetamine was
found. Therefore, we must examine the record to find additional facts and circumstances that
affirmatively link Appellant and the contraband. Those circumstances may include whether (1) she
was present when the search was executed; (2) the contraband was in plain view; (3) the contraband
was in close proximity to or easily accessible by Appellant; (4) she was under the influence of the
contraband; (5) she was in possession of other contraband when arrested; (6) she made incriminating
statements upon arrest; (7) she attempted to flee; (8) she made furtive gestures; (9) there was an odor
of the contraband present; (10) other contraband or drug paraphernalia were present; (11) she owned
or had a right to possess the place where the contraband was found; (12) the contraband was found
in an enclosed place; (13) there was a significant amount of contraband; and (14) she possessed
weapons or large amounts of cash. See Gant v. State, 116 S.W.3d 124, 131 (Tex. App.–Tyler 2003,
pet. ref’d); de la Garza v. State, 898 S.W.2d 376, 379 (Tex. App.–San Antonio 1995, no pet.);
Hernandez v. State, 867 S.W.2d 900, 904 (Tex. App.–Texarkana 1993, no pet.). If the contraband
is found in a personal item in which ownership is attributed to the accused, the accused is
affirmatively linked to the contraband. See Guiton v. State, 742 S.W.2d 5, 10 (Tex. Crim. App.
1987). However, this list is not exhaustive, and the number of affirmative links found is not as
important as the degree to which they tend to link Appellant to the contraband. See Williams v. State,
906 S.W.2d 58, 65 (Tex. App.–Tyler 1995, pet. ref’d).
Affirmative Links
            Appellant was present during the search of the mobile home where she and her family lived. 
Maclin testified that the master bedroom contained syringes, razor blades, crack pipes, chemicals,
pills, acid, and lithium batteries. She also testified that a brown pouch on the living room sofa
contained what she believed to be methamphetamine. Bond testified that he found other materials
in the bedroom, including camp fuel, coffee filters, cotton balls, tubing, spatulas, muriatic acid,
pseudoephedrine, and syringes. He also found baggies in the bedroom. Cloud testified that two of
the baggies found in the mobile home contained a trace amount of methamphetamine and a third
contained .040 grams. Bond also found numerous materials in the backyard that are commonly used
in the manufacture of methamphetamine. A burn pile contained camp fuel cans, aerosol cans, and
remnants of blister packs. All of these items were in plain view.
            Appellant’s daughter, eight-year-old Cheyenne Frizzell (“Cheyenne”), testified that she had
lived in the house with her mom and dad for four years. Within the past couple months, she had seen
her mother cook “some of that pink stuff.” She testified that her Uncle Jim, Appellant’s brother, was
also present during the cooking of the “pink stuff.” Cheyenne observed her mother and uncle cooking
the pink stuff, which Appellant said was “bubble gum.” The child further stated that the substance
smelled bad. She had also seen the “pink stuff” in her bedroom dresser. When she asked Appellant
what it was, Appellant said it was more bubble gum. She also stated she was not allowed to go into
her room and sleep because Uncle Jim was busy in there.
            Appellant had access to the narcotics found on the premises, since she was an owner and
occupant of the mobile home. Appellant told her one of her friends that some of the drugs found at
the house were Appellant’s. The 654.34 grams of methamphetamine was found on a table outside
the back door where other personal items of the accused were located.
            There was also evidence in the case that indicated that Appellant was not the only person who
could have possessed the narcotics. She and her husband owned the mobile home and her brother
was a visitor to the home. 
            As previously stated, in examining factual sufficiency, we conduct a neutral review. Our
review of the record as a whole, considered in a neutral light, does not reveal any evidence that causes
us to conclude that the evidence supporting a finding of Appellant’s guilt beyond a reasonable doubt
is so obviously weak or so greatly outweighed by contrary evidence as to render the conviction clearly
wrong and manifestly unjust. As such, we conclude that the jury was rationally justified in finding
Appellant guilty beyond a reasonable doubt. Therefore, we hold that the evidence is factually
sufficient to sustain Appellant’s conviction. 
 
Competency of Child Witness
            In her third issue, Appellant argues that the trial court erred in allowing Appellant’s eight-year-old daughter, Cheyenne, to testify at trial. Appellant further argues that the testimony of the
child was nonsensical and harmful in that she could not observe, recall, or narrate relevant events.
Applicable Law
            Texas Rule of Evidence 601 states as follows:
 
Competency and Incompetency of Witness
 
              (a)          General Rule. Every person is competent to be a witness except as otherwise
provided in these rules. The following witnesses shall be incompetent to testify in
any proceeding subject to these rules:
 
                            . . . .
 
                            (2)         Children. Children or other persons who, after being examined by
the court, appear not to possess sufficient intellect to relate
transactions with respect to which they are interrogated.
 
 
Tex. R. Evid. 601.
            As a general rule, a child is competent to testify unless, after examination by the court, she
does not appear to possess sufficient intellect to relate transactions with respect to which she is
interrogated. Tex. R. Evid. 601(a)(2); see Hollinger v. State, 911 S.W.2d 35, 38 (Tex. App.–Tyler
1995, pet. ref’d); Rodriguez v. State, 772 S.W.2d 167, 170 (Tex. App.–Houston [14th Dist.] 1989,
pet. ref’d). In determining competency, the court considers three elements: (1) the competence of the
witness to observe intelligently the events in question at the time of the occurrence; (2) the capacity
of the witness to recollect the events; and (3) the capacity of the witness to narrate the facts. 
Hollinger, 911 S.W.2d at 38-39. The third element requires the witness to be able to understand the
questions that are asked, to be able to frame intelligent answers to those questions, and to be able to
understand the moral responsibility to tell the truth. Watson v. State, 596 S.W.2d 867, 870 (Tex.
Crim. App. 1980); Hollinger, 911 S.W.2d at 39. 
            Whether a child witness is able to define “the truth” and “a lie” is not the issue. See Upton
v. State, 894 S.W.2d 426, 429 (Tex. App.–Amarillo 1995, pet. ref’d). The important inquiry is
whether the child demonstrates an understanding of the differences as well as the need to be truthful.
See id.
Standard of Review
            The determination of a trial court that a child witness is competent to testify is reviewable by
an abuse of discretion standard. Reyna v. State, 797 S.W.2d 189, 191 (Tex. App.–Corpus Christi
1990, no pet.). On appeal, we must review the entire testimony of the child to determine if the trial
court abused its discretion. Dufrene v. State, 853 S.W.2d 86, 88 (Tex. App.–Houston [14th Dist.]
1993, pet. ref’d). A court’s determination as to competency will not be disturbed on review unless
an abuse of discretion is shown. Broussard v. State, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995). 
An abuse of discretion occurs where a trial court acts arbitrarily and unreasonably, without reference
to guiding rules or principles of law. See Woods v. State, 14 S.W.3d 445, 451 (Tex. App.–Fort Worth
2000, no pet.).
Analysis
            In the instant case, the trial court examined Cheyenne outside the presence of the jury. She
was able to relate her name, age, school, and names of her teachers. She also stated that she knew
the difference between the truth and a lie. The trial court asked Cheyenne if she knew why she was
in court and if she remembered what happened during the “last year.” The child responded that “my
mom was doing bad stuff” and that she did remember the events of last year. At the conclusion of
the voir dire examination, the trial court made certain findings, including the following:
 
              ...           she is able to express what her opinion on a matter is
 
              ...           she is able to recall things in the past, her teacher from last year, her teacher today
and the court believes that she has sufficient ability to recall things in the matter, to
relate them, seems to be aware of what she may be called to testify on in this case,
and I’ll allow her to be called as a witness in the case.
 
 
            During questioning by the court, Cheyenne described the black robe of the trial judge as
“green.” Appellant questions whether Cheyenne’s testimony can be reliable at all if the child cannot
get such a simple matter correct. Cheyenne did give incorrect answers in regard to the color of the
judge’s robe. However, incorrect answers, while probative, do not alone render the child
incompetent. See Fields v. State, 500 S.W.2d 500, 503 (Tex. Crim. App. 1973); Berotte v. State, 992
S.W.2d 13, 17 (Tex. App.–Houston [1st Dist.] 1997, pet. ref’d) (confusing and inconsistent responses
from a child are not reasons to determine she is incompetent to testify; rather, they speak to
credibility). 
            Cheyenne’s “green robe” answer may be incorrect, but she was able to answer each
substantive question with clarity. Consequently, we conclude that the record supports the trial court’s
findings. Therefore, the trial court did not abuse its discretion by allowing the child to testify. 
Appellant’s third issue is overruled.
 
Conclusion
            Having overruled Appellant’s issues on appeal, we affirm the judgment of the trial court.
 
                                                                                                    DIANE DEVASTO 
                                                                                                                 Justice
 
Opinion delivered October 29, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
(DO NOT PUBLISH)