

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NOS.  02-07-308-CR**
**02-07-309-CR**
**02-07-310-CR**
**02-07-311-CR**
**02-07-312-CR**
**02-07-313-CR**
**02-07-314-CR**
**02-07-315-CR**
**02-07-316-CR**

DONN DEVERAL MARTIN                                         APPELLANT
A/K/A DON DEVERAL MARTIN

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In six issues, Appellant Donn Deveral Martin appeals his nine convictions.

We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II.  Factual and Procedural Background

Martin, a resident of Abilene, occasionally slept over at his daughter's house in Arlington.  At times, Martin was alone behind closed doors with S.S., his five-year-old granddaughter.  On the morning of March 6, 2006, S.S. told her mother that Martin had come into her room the previous night and licked her "butt."[2]  During the investigation, the police discovered hundreds of child pornography images on Martin's computer, including photographs of S.S.

Following the investigation, the State charged Martin, by multiple indictments, with four counts of aggravated sexual assault of a child under fourteen years of age, three counts of sexual performance by a child, and two counts of indecency with a child.  Martin pleaded not guilty, and the case proceeded to trial.  After hearing the evidence, the jury found Martin guilty as charged on all counts and in a separate punishment hearing sentenced him to life on each of the four counts, of aggravated sexual assault and to twenty years on each of the remaining counts.  This appeal followed.

## III.  Motion to Suppress

In his first issue, Martin contends that the trial court erred in denying his motion to suppress evidence obtained from the illegal search of his computer.  He argues that his wife did not have authority to consent to the search; and

---

[2] The evidence showed that S.S. was referring to her genitals when she said "butt."

therefore, the warrantless search by the police was unreasonable. Additionally, Martin argues that because his wife lacked authority to consent and because his oral consent was invalid[3] the police lacked effective consent to search his computer. However, since Martin's wife did have authority to consent and she did, in fact, consent, the validity of Martin's consent is moot and therefore, will not be addressed.

## A. Standard of Review

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007); *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *Id.*; *see Amador*, 221 S.W.3d at 673; *Wiede*, 214 S.W.3d at 25. We then review the trial court's legal ruling de novo

---

[3] Martin claims that his oral consent is invalid because he was under the influence of pain medication at the time of his consent.

unless the implied fact findings supported by the record are also dispositive of the legal ruling. *Kelly*, 204 S.W.3d at 819.

We must uphold the trial court's ruling if it is supported by the record and is correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

## B. Applicable Law

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. A warrantless search is unreasonable per se unless it fits into one of the few specifically defined and well established exceptions. *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130, 2135 (1993); *see Estrada v. State*, 154 S.W.3d 604, 608 n. 12 (Tex. Crim. App. 2005). One such exception is a warrantless search conducted after a person has given consent. *Brimage v. State*, 918 S.W.2d 466, 480 (Tex. Crim. App. 1994).

A less common variation of the standard consent case is that of third party consent. The Fourth Amendment recognizes a valid warrantless search if the officers secure the consent of a third party who possesses common authority over the premises or effects sought to be inspected. *United States*

*v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974).  Whether common authority exists, turns on evidence of "mutual use of the property by persons generally having joint access or control for most purposes."  *Id.* at 171 n. 7; *Welch v. State*, 93 S.W.3d 50, 52 (Tex. Crim. App. 2002).  Furthermore, the court of criminal appeals has emphasized that "the third party's legal property interest is not dispositive in determining whether he has the authority to consent to a search."  *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).

## C.  Applicable Facts

In March, 2006, while investigating an outcry of sexual assault allegedly committed by Martin against S.S., Detective Mike Weber of the Arlington police department went to Martin's home in Abilene and spoke with Martin's wife Beverly.  Beverly discussed her and Martin's family history with Detective Weber.  At some point, Detective Weber asked whether there were any computers in the house.  Beverly showed Detective Weber a computer located in the downstairs hallway and Detective Weber asked if he could take it with him.  Beverly hesitated and said that she would need to call Martin, who was in the hospital recovering from surgery, to ask his permission.  She called Martin and informed him that the police were at the house and were asking to take his computer.  Martin replied, "Well, Bev, if that will clear this up, give it

to them." Beverly then signed a written consent form and turned the computer over to Detective Weber.

## D. Analysis

Before trial, Martin filed a motion to suppress the evidence obtained from his computer on the grounds that the evidence had been illegally obtained. Specifically, he argued that the search of his computer was unreasonable because the police lacked valid consent to search.

During the suppression hearing, Beverly testified that the title to the house she and Martin lived in was solely in her name, that she could go into any area of the house, and that she had authority to use Martin's computer. However, Martin argues that because Beverly never used the computer without his help and because it belonged solely to him, she did not have authority to consent to the search. We disagree.

The authority to consent is not determined by ownership or actual use but by joint access or control. *See Matlock*, 415 U.S. 164. Here, Beverly shared equal access with Martin. Martin's computer was located in an open area of the house and not behind locked doors; the computer did not have password protection except for internet purposes; and there was no evidence in the record, nor did Martin direct us to any, that Beverly was prohibited from using his computer.

Therefore, it does not matter that Beverly never used Martin's computer without his help.[4] The fact remains that she had access to and authority to use his computer. Martin also argues that Beverly acknowledged her lack of authority to consent when she told the police she needed to call Martin to get his permission. Again, we disagree.

The fact that Beverly called Martin to get his permission in no way diminishes her authority to consent. *See Welch*, 93 S.W.3d 50 (holding that third party consent—at least a third party that has mutual access—is valid even when the owner is present and does not consent to the search). Here, we've already established that Beverly had mutual access to Martin's computer; therefore, Beverly's authority to consent is not contingent on Martin granting permission. *Id.* In fact, Beverly only asked to call Martin because she was worried about the integrity of his research, and not because she lacked authority.[5] Therefore, Beverly provided valid and effective consent when she signed the written consent form.

---

[4] At trial, Beverly testified that the reason she did not use Martin's computer without Martin being there was because she was not very good with computers.

[5] When asked if the reason she did not give consent right away was because the computer belonged to Martin, Beverly replied, "No. Well, the reason I didn't want to do that was because of all of his research on the computer. Maybe I've watched too many shows, but I didn't want to mess up years and years of research."

Because the record supports a finding that Beverly had joint access to Martin's computer, and because Martin's arguments show, at most, a lack of equal, but not joint, access over his computer, we conclude that Martin failed to demonstrate that the trial court erred in denying his motion to suppress. Accordingly, we overrule Martin's first issue.

## IV.  Factual Sufficiency

In his second issue, Martin argues that the evidence, when viewed in a neutral light, is factually insufficient to support his nine convictions.  In the alternative, Martin asserts that even if the evidence is factually sufficient to support the conviction for the March 5, 2006, count of aggravated sexual assault of a child under the age of fourteen, it is insufficient to support the remaining eight convictions, arguing that the State failed to identify him as the man in the photographs.  We disagree.

## A.  Standard of Review

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the jury's determination is clearly wrong and

manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the jury's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the jury's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8.

Thus, we must give due deference to the jury's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

**B. Applicable Law**

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). As a fact finder, the jury is entitled to draw reasonable inferences from circumstantial evidence to ultimate facts. *Villani v. State*, 116 S.W.3d 297, 303 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Thus, identity of a perpetrator can be proved by direct or circumstantial evidence; eyewitness identification is not necessary. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986); *Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd).

**C. Analysis**

Out of Martin's nine convictions, only one arose from S.S.'s outcry. The remaining eight convictions were the result of photographs found on Martin's computer. Because Martin's factual insufficiency argument is separated into (1) the conviction that arose from S.S.'s outcry and (2) the convictions that arose from the photographs, we will tailor our analysis to his arguments.

**1. Conviction Arising From S.S.'s Outcry**

Martin claims that the evidence is factually insufficient to support the aggravated sexual assault conviction resulting from S.S.'s outcry because S.S.'s testimony about the events that occurred were unclear and lacked credibility.

S.S. was six years old at the time of trial. She testified that she could not remember exactly what had happened to her when she was five years old but, upon further questioning, she testified that she did remember telling her mother that something bad had happened when her "granddaddy" had been in the room with her. On cross, in response to the defense attorney's questions, S.S. testified that Ariel, King Triton, and Flounder, from the movie The Little Mermaid, were real. On redirect, however, S.S. indicated that she had only seen Disney characters in a movie and that a cartoon character, unlike her family, had never visited her in her home or engaged in any real–life activities with her. However, S.S.'s testimony was not the only evidence put before the jury.

S.S.'s mother, testified that on March 5, 2006, her father Martin had spent the night at her house. The following morning, her five-year-old daughter, S.S., told her that Martin had "licked [her] butt . . . and [she] didn't like it." Martin acknowledged sleeping over at his daughter's house on the

night of the alleged incident but denied doing anything inappropriate to his granddaughter.

The State introduced evidence that during the subsequent sexual assault exam at the hospital, S.S. repeated the same allegation to the doctor. The doctor collected S.S.'s underwear as evidence and a forensic biologist for the Tarrant County Medical Examiner's Office examined them. The forensic biologist testified that DNA comprised of matter consistent with female vaginal secretions combined with saliva had been identified and that Martin could not be excluded as a contributor. Martin testified that a "tummy-blowing" game could have resulted in the saliva on S.S.'s underwear.

The State also introduced into evidence the child pornography found on Martin's computer. Martin responded by introducing evidence that his son-in-law worked as a computer consultant and that, although highly unlikely, it was possible for someone to remotely hack into a computer and download photographs onto it. Martin's defensive theory was that the allegations against him had been contrived by his daughter and her husband because of an argument over a house they were purchasing from him. To support this theory, Martin introduced into evidence, by way of various persons' testimony, that he owned the house that his daughter and her family lived in and that he had had a falling out with her over selling the house. The State responded by

introducing into evidence two prior occasions where Martin had been involved in misconduct with a child.

After examining all the evidence in a neutral light, we find that Martin's conclusion that the evidence is factually insufficient readily conflicts with the standard of review for factual sufficiency. Martin argues the credibility of S.S.'s testimony in isolation in order to arrive at his conclusion; however, the factual sufficiency standard requires that we view *all* the evidence in a neutral light. *See Watson*, 204 S.W.3d at 414. Therefore, after examining all of the evidence in a neutral light, favoring neither party, we hold that the evidence supporting Martin's conviction for the March 5, 2006, aggravated sexual assault charge is not so weak that the jury's determination is clearly wrong or manifestly unjust.

### 2. Convictions Arising From Photographs

Additionally, Martin argues that the State failed to identify him as the man in the photographs found on his computer; therefore, the evidence is factually insufficient to support the eight convictions that arose as a result of the photographs. To support his argument, Martin claims that he did not take the pictures, that he did not commit any of the alleged offenses, and that he was out of the country on the dates that the alleged offenses occurred. The jury, however, received the following direct and circumstantial evidence.

Detective Mike Weaver of the Arlington police department testified that a search of Martin's computer turned up hundreds of child pornography photographs. Martin testified that he did not know the photographs were on his computer and that the computer was not password protected. Detective Weaver also testified that he had identified the dates the photographs were taken and the type of camera used to take them, a Sony Cybershot DSC-P32. Martin responded that he was either in Abilene or out of the country on the dates the photographs were taken. However, the State introduced evidence that Martin's passport revealed that he was unaccounted for during the times he claimed to be out of the country. The State also entered into evidence a Sony Cybershot DSC-P32 camera retrieved by the police from Martin's home. Martin responded that the camera belonged to his wife; however, his wife testified that Martin was the primary user of the camera.

Some of the photographs discovered on Martin's computer showed the image of an adult male, whose face is unseen, performing sexual acts with S.S. In a few of the photographs, the man's shirt, hands, and sex organ can be seen. Martin's daughter and wife both testified that the man's shirt in the photograph looked like one owned by Martin. Martin denied owning the shirt and the police were unable to find the shirt at Martin's house. However, Martin's wife testified that she might have packed the shirt in Martin's bag for

his stay at the hospital. Furthermore, Martin's daughter testified that the hand shown in one of the photographs belonged to Martin.[6] Finally, Detective Weber testified that the male's sex organ in the photograph was circumcised, that he photographed Martin's sex organ, and that Martin was circumcised. Martin testified that he had not been circumcised. However, Martin's wife testified that Martin had told her that he had had a partial circumcision.

After examining all the evidence in a neutral light, we cannot say that the evidence in this case is so weak that the verdicts are clearly wrong and manifestly unjust or that the conflicting evidence so greatly outweighs the evidence supporting the verdict that the jury's determination is manifestly unjust. *See Johnson*, 23 S.W.3d at 9. A decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State. *Cain*, 958 S.W.2d at 410. Deferring, as we must, to the jury's resolution of contradictory testimony and evaluation of credibility and demeanor, we conclude that the evidence, when viewed in a neutral light, is factually sufficient to support the jury's finding that Martin was the unidentified man in the photographs; and therefore, the evidence is factually sufficient to support the eight convictions that arose from the photographs. *See Johnson*,

---

[6] Martin's daughter based her identification of his hand on a scar and freckle shown in the photograph that matched a scar and freckle on her father's hand.

23 S.W.3d at 9.

Having found that the evidence is factually sufficient to support all nine of Martin's convictions, we overrule Martin's second issue.

## V. Competency of a Child Witness

In his third and fourth issues, Martin contends that the trial court erred in allowing six-year-old S.S. to testify.

### A. Standard of Review

A trial court's determination of whether a child witness is competent to testify and its ruling on the issue will not be disturbed on appeal absent an abuse of discretion. *Broussard v. State*, 910 S.W.2d 952, 960 (Tex. Crim. App. 1995), *cert. denied*, 519 U.S. 826 (1996). We review the child's responses to qualification questions as well as the child's entire testimony to determine whether the trial court's ruling constituted an abuse of discretion. *De Los Santos v. State*, 219 S.W.3d 71, 80–81 (Tex. App.—San Antonio 2006, no pet.).

### B. Applicable Law

Rule 601 of the Rules of Evidence, creates a presumption that a person is competent to testify. Tex. R. Evid. 601. The trial court has no duty to conduct a preliminary examination on its own motion. *McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998). Once the competency of a child

witness is challenged, the trial court must assure itself that the child has (1) the ability to intelligently observe the events in question at the time of the occurrence, (2) the capacity to recollect the events, and (3) the capacity to narrate the events. *Torres v. State*, 33 S.W.3d 252, 255 (Tex. Crim. App. 2000) (quoting *Watson v. State*, 596 S.W.2d 867, 870 (Tex. Crim. App. 1980)). Inconsistencies or conflicts in a child's testimony do not automatically render the child incompetent to testify but, instead, affect the weight to be given to the child's testimony. *See Upton v. State*, 894 S.W.2d 426, 429 (Tex. App.—Amarillo 1995, pet. ref'd).

However, to preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999). An objection must be made as soon as the basis for the objection becomes apparent. Tex. R. Evid. 103(a)(1); *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App.), *cert. denied*, 522 U.S. 917 (1997); *Polk v. State*, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial

court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

**C. Analysis**

Here, Martin complains that the trial court erred in finding S.S. competent to testify and further erred in having overruled his motion to strike S.S.'s testimony. However, Martin failed to timely preserve his complaint.

In a hearing held outside the presence of the jury, the trial court probed S.S.'s ability to distinguish the truth from a lie by asking, "[I]f I said, how do you like my white robe, would that be telling you the truth or would I be telling you a lie?" S.S. correctly answered that it was a lie. Also, when asked by the State, "[W]e know that you're not supposed to tell lies, don't we?", S.S. replied "yes."

After asking her a series of questions, the trial court found S.S. competent to testify. During the court's questioning of S.S., Martin did not object, nor did he object when the trial court made its finding of competency. Furthermore, Martin did not make any objections when S.S. testified in the presence of the jury. In fact, Martin's only objection came after the witness had been passed and the jury had left for the day. That was too late. *See* Tex. R. Evid. 103(a)(1); *Lagrone,* 942 S.W.2d at 618 (holding that the objection was untimely because appellant did not object until the prosecutor's question had

been asked and answered, and the prosecutor had passed the witness); *Polk*, 729 S.W.2d at 753 (holding that for an objection to be timely, it must be lodged "at the earliest opportunity," or "as soon as the ground for objection becomes apparent").

Because Martin failed to object at his earliest opportunity, he has preserved nothing for appellate review on this point; therefore, we overrule Martin's third and fourth issues.

## VI.  Double Jeopardy

In his fifth issue, Martin complains that his nine convictions constitute multiple punishments for the same offense;  therefore, his right to be free from double jeopardy was violated.

### A.  Standard of Review

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense.  U.S. Const. amend. V.  Generally, this clause protects against multiple punishments for the same offense.  *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990) (op. on reh'g).

To determine whether offenses are the same, we must examine the elements of the applicable statutes to determine whether each statute "requires

proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932); *see United States v. Dixon*, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856 (1993); *Parrish v. State*, 869 S.W.2d 352, 353–55 (Tex. Crim. App. 1994). However, in multiple punishment cases, the court of criminal appeals has recognized that *Blockburger* is not the exclusive test and that theses cases require a two-step analysis. The first step is to examine the proof necessary to establish the statutory elements of each offense as alleged in the indictment. *Vineyard v. State*, 958 S.W.2d 834, 836 (Tex. Crim. App. 1998). The second step requires an analysis of the legislative intent, i.e., whether it was the legislature's intent to impose multiple punishments or only one. *Ex parte Ervin*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999).

**B. Applicable Law**

A person commits aggravated sexual assault of a child under the age of fourteen, if the person intentionally or knowingly: (1) causes the penetration of the anus or sexual organ of a child by any means or (2) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor. Tex. Penal Code Ann. § 21.02(a)(1)(B)(i),(iv) (Vernon Supp. 2008).

A person commits the offense of indecency with a child younger the seventeen years, if the person: (1) engages in sexual contact with the child or

causes the child to engage in sexual contact or (2) with intent to arouse or gratify the sexual desire of any person (A) exposes the person's anus or any part of the person's genitals, knowing the child is present or (B) causes the child to expose the child's anus or any part of the child's genitals. Tex. Penal Code Ann. § 21.11(a)(1), (2) (Vernon 2003). Sexual contact means any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id*. at (c)(2).

Courts have held indecency with a child to be a lesser included offense of aggravated sexual assault in certain circumstances—namely, when the State uses one act to prove both offenses. *See, e.g., Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998); *Beltran v. State*, 30 S.W.3d 532, 534 (Tex. App.—San Antonio 2000, no pet.). However, when evidence supporting an indecency charge is not the same as that supporting the prosecution for aggravated sexual assault, the former will not be deemed to be a lesser included offense of the latter, and both may be prosecuted without violating the double jeopardy clause. *See, e.g., Bottenfield v. State*, 77 S.W.3d 349, 358 (Tex. App.—Fort Worth 2002, pet. ref'd), *cert. denied*, 539 U.S. 916 (2003) (evidence showed appellant touched victim's "winkie" twice, thus supporting convictions for both aggravated sexual assault and indecency).

**C. Analysis**

Martin asserts that the trial court deprived him of his constitutional protections against double jeopardy by allowing the State to prosecute and punish him twice for the same offense. Specifically, Martin argues that the State did not conclusively establish when the photographs found on his computer were taken and, as a result, Martin received multiple punishments for the same offense. In the alternative, Martin argues that, if the dates were conclusively established, then the two photographs taken on December 16, 2004, constitute one offense; and therefore, the convictions he received for the December 16, 2004, photographs—indecency with a child and aggravated sexual assault—constitute multiple punishments. We disagree.

The following is a list of Martin's convictions arising from the photographs found on his computer:[7]

| | | |
|---|---|---|
| **2-07-309-CR** – 05/28/2005 | **Indecency with a Child (Fondling):** Photo of a child laying between an adult male's legs reaching up behind herself and grasping the adult male's sex organ. | |
| **2-07-310-CR** – 12/16/2004 | **Indecency with a Child (Fondling):** Photo of a child's hands grasping the end of an adult male's sex organ. | |
| **2-07-311-CR** – 05/28/2005 | **Aggravated Sexual Assault of a Child** | |

---

[7] Detective Weaver testified that although some of the pictures did not show the face of S.S., other pictures taken around the same time and at the same location did. The jury could have reasonably inferred that the young female in the photographs was S.S. Furthermore, we have already held that there was sufficient evidence to support the jury's determination that Martin is the male in the photographs.

| | |
|---|---|
| | **(under 14):** Photo of an adult male's sex organ touching the vagina of a young female. |
| **2-07-312-CR** – 04/18/2005 | **Aggravated Sexual Assault of a Child (under 14):** Photo of an adult male's sex organ touching the vagina of a young female. |
| **2-07-313-CR** –12/16/2004 | **Aggravated Sexual Assault of a Child (under age 14):** Photo showing the mouth of a child being penetrated by an adult male's sex organ. |
| **2-07-314-CR** –12/16/2004 | **Sexual Performance by a Child:** Digital File of a young female ex–posing her genitals. |
| **2-07-315-CR** –01/08/2005 | **Sexual Performance by a Child:** Digital File of a young female touching the outside of her vaginal area and spreading the vaginal area to some degree. |
| **2-07-316-CR** –12/11/2004 | **Sexual Performance by a Child:** Digital File of a young female pulling back her panties and exposing her vaginal area. |

At trial, the jury heard testimony by Detective Mike Weaver, a certified forensic computer examiner with the Arlington police department. Detective Weaver testified extensively on the methods he used to determine the dates that the photographs were taken. On cross, Martin asked Detective Weaver whether it was possible to manipulate the date and time on the image. Detective Weaver's reply was, "Is it possible, yes. Unlikely, no. It's not likely in this case in my opinion."

Deferring, as we must, to the jury's resolution of contradictory testimony

and evaluation of credibility and demeanor, we conclude that the evidence supports the jury's reliance on the dates established by Detective Weaver's testimony. Consequently, because the photographs, with a few exceptions, were taken on different dates, Martin's convictions do not violate the double jeopardy clause. However, since there were multiple punishments for photographs taken on December 16, 2004, we must address Martin's argument that the State punished him twice for the same act.

In separate indictments, the State charged Martin with aggravated sexual assault of a child under the age of fourteen and indecency with a child. The charges stemmed from two photographs found on Martin's computer; both taken on December 16, 2004. The photographs clearly show two separate and distinct acts; (1) contact between S.S.'s hands and Martin's sex organ and (2) contact between S.S.'s mouth and Martin's sex organ. *See, e.g., Murray v. State*, 24 S.W.3d 881, 889 (Tex. App.—Waco 2000, pet. ref'd) (holding that defendant may be convicted of both indecency with a child and aggravated sexual assault when evidence indicates that defendant penetrated victim's female sexual organ with his fingers and touched her genitals with his tongue). Because the evidence supporting Martin's indecency charge is not the same as that supporting the evidence for his aggravated sexual assault charge, the former will not be deemed to be a lesser included offense of the latter, and both

may be prosecuted without violating the double jeopardy clause. Accordingly, we overrule Martin's fifth issue.

## VII. Extraneous Offenses

In his sixth and final issue, Martin contends that the trial court abused its discretion in admitting evidence of extraneous offenses.

### A. Standard of Review

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). If the trial court's ruling was within the zone of reasonable disagreement, there is no abuse of discretion. *Id.* Further, a trial court's decision regarding admissibility of evidence will be sustained if correct on any theory of law applicable to the case, even when the court's underlying reason for the decision is wrong. *Romero v. State*, 800 S.W.2d 539, 543–44 (Tex. Crim. App. 1990) (citing *Spann v. State*, 448 S.W.2d 128 (Tex. Crim. App. 1969)).

### B. Applicable Law

Pursuant to rule 404(b), evidence of extraneous offenses is not admissible during the guilt-innocence phase of a trial to prove a defendant acted in conformity with his bad character. Tex. R. Evid. 404(b). However, extraneous offense evidence may be "admissible for other purposes, such as proof of

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" when it has relevance beyond character conformity. *Id*.; *Moses*, 105 S.W.3d at 626.

Rebuttal of a defensive theory is also one of the permissible purposes for which evidence may be admitted under rule 404(b).  *Moses*, 105 S.W.3d at 626.  The court of criminal appeals has held that extraneous offense evidence is admissible under rule 404(b) to rebut a defensive theory raised in an opening statement.  *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994) (op. on reh'g).  In sexual assault cases, extraneous offense evidence may be admitted under rule 404(b) to rebut defensive theories of retaliation or that the defendant is an innocent victim of a "frame-up."  *Wheeler v. State*, 67 S.W.3d 879, 887 n. 22 (Tex. Crim. App. 2002) (involving the defensive theory of conspiracy or frame-up motivated by greed or money); *Moses*, 105 S.W.3d at 627 (involving a retaliation defensive theory); *Dennis v. State*, 178 S.W.3d 172, 178 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (involving frame-up defensive theory motivated by anger or revenge).

Even if relevant evidence is offered and admissible under rule 404(b), a trial court should nevertheless exclude it if its probative value is substantially outweighed by the danger of unfair prejudice.  Tex. R. Evid. 403; *Moses*, 105 S.W.3d at 626.  The trial court must conduct a rule 403 balancing test to make

this determination. *See Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999); *Bargas v. State*, 252 S.W.3d 876, 890–91 (Tex. App.—Houston [14th Dist.] 2008, no pet. h.). When undertaking a rule 403 analysis, a trial court must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 642 (Tex. Crim. App. 2006).

## C. Analysis

Martin contends that the trial court abused its discretion by permitting the State to question him regarding a statutory rape charge filed against him in 1983.[8] He also argues that the trial court abused its discretion by allowing the testimony of Amanda Rogers.[9] Martin complains that the evidence was too

---

[8] The statutory rape charge was later dropped when Martin pleaded guilty to a lesser charge of contributing to the delinquency of a minor.

[9] Rogers testified that in 1992, when she was around the age of nine or ten, Martin, while staying the night at her parent's house, had kissed her, had inserted his finger into her vagina, and had touched her inappropriately on

remote to be probative; or alternatively, that the probative value, if any, was substantially outweighed by its prejudicial effect. The State however, argues that it sought to admit the evidence of the extraneous offenses to rebut Martin's defensive theory that his daughter and son-in-law had "orchestrated this event." In his opening statement, Martin stated:

> Keep an open mind until you've listened to all the evidence in this case, because there's a lot that hasn't been said. What you're going to find out is that in 2001 [S.S.] and her parents moved into the house that was owned by [Martin] . . . They moved in and they decided that they wanted that house. Well, they were never able to get the money together to buy the house. What they did do, the house was damaged in 2002 by hail and rain . . . and there was substantial funds that were never given to [Martin]. [The funds] were put in [S.S.'s parents'] account and kept and some of the repairs were paid for. . . . They never came through.
>
> Subsequent to that time[,] the two of them kept asking [Martin], "Why don't you just give us the house? . . . And he said, "No, we had a deal that you were going to buy the house from me."
>
> And what has happened is [S.S.'s father], who is a computer expert, you'll find worked on this computer that [Martin] had bought in 2005 at his house okay? These photos that are on this computer will give you a string of dates of when supposedly the photos were taken and when they were placed on the computer. You'll find out that all those dates and times can be manipulated by an expert that knows how to manipulate them.

It is clear from his opening statement, that Martin raised a "frame-up" defensive theory. Therefore, under *Moses*, we hold that the trial court did not abuse its discretion in determining that the statutory rape charge and Rogers'

---

other parts of her body.

testimony were relevant rebuttal evidence to show the jury that S.S.'s parents were not motivated by greed or money in making the allegations against Martin. *See Moses*, 105 S.W.3d at 627. However, as previously noted, even if relevant evidence is offered and admissible under rule 404(b), we must nevertheless exclude it if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403; *Moses*, 105 S.W.3d at 626. Accordingly, we must conduct a 403 balancing test to determine whether the probative value is outweighed by undue prejudice. *See Mozon*, 991 S.W.2d at 847; *Bargas*, 252 S.W.3d at 891–92.

The first of the three factors—the strength of the evidence to make a fact of consequence more or less probable—weighs strongly in favor of admissibility. This is so, primarily because the evidence of the statutory rape charge and the testimony by Rogers were probative to rebut the defensive theory that S.S.'s parents had framed Martin in order to get the house. Therefore, the admission of this evidence makes it less likely that S.S.'s allegations concerning the charged offenses were the result of a frame-up.

As to the second and third factors, although the evidence had the potential to impress the jury in an indelible way, any unfair prejudice is outweighed by the probative value of the evidence. *See Bargas*, 252 S.W.3d at 893–94. Furthermore, the State did not elicit detailed accounts of the

offenses, but only asked a few questions in order to show similarities to the charged offenses.

Finally, other than the details and circumstances of the charged offenses, the State had no other evidence to rebut Martin's defensive theory. Therefore, the State displayed a need for the evidence to counter Martin's defensive theory that S.S.'s parents were trying to frame him.[10]

In balancing the above factors, we find that the trial court's decision to admit the extraneous offense evidence was within the zone of reasonable disagreement. As such, we hold that the trial court did not abuse its discretion under rule 403 in admitting the extraneous offense evidence; and accordingly, we overrule Martin's sixth and final issue.

---

[10] Martin elicited testimony from L.S. to support his theory that L.S., as a computer expert, had the ability to tamper with his computer.

## VIII.  Conclusion

Having overruled all six of Martin's issues, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 6, 2008